(Decided 17th March, 1868.)

---

MARY M. KEARNEY *vs.* WILLIAM F. TURNER.

*Right of Administration and of Administration de bonis non, under the Code of Pub. Gen'l Laws, Art. 93, secs. 22, 23, 29, 56 and 70—Effect of Indebtedness to the Estate on the part of the Applicant for letters—Jurisdiction of the Orphans' Court to inquire directly into an alleged Unsoundness of Mind in the person Entitled to Administration.*

Where a deceased person left two first cousins, the one a female related on the part of the father, and the other a male related on the part of the mother, the female is entitled to administer on the estate of the deceased under the Code of Pub. Gen'l Laws, Art. 93, sec. 22, she being the *next of kin* in the sense in which those words are used in that section.

And she is entitled as well to letters *de bonis non* under sec. 70 of said Article.   The whole Article of the Code must be construed together.   As by the 22d section it is expressly provided, that among collaterals the next of kin are to be preferred, without regard to the remoteness of their relationship; it seems to be clear that where such next of kin makes application for letters *de bonis non*, she being by law the person entitled, on application, such letters ought to be granted to her, and cannot properly be refused at the discretion of the Court.

The fact that the applicant for letters is indebted to the estate of the deceased, does not furnish any sufficient ground upon which the Orphans' Court is authorized to deprive her of the administration.

By the Code, Art. 93, sec. 56, the mode is prescribed in which the Orphans' Court may have the question of alleged unsoundness of mind of a party entitled to administration tried and determined, by issuing a writ *de lunatico inquirendo;* and that Court has no power to examine proof on this subject, or to try and decide the question.

APPEAL from the Orphans' Court of Prince George's County.

On the death of Richard S. Blackburn, the administrator of David Craufurd, the Orphans' Court of Prince George's county in December, 1867, granted letters of administration *de bonis non* upon the personal estate of said Craufurd, to the appellee, William F. Turner. This appeal is taken from that order by the appellant, Mary, who was the only surviving first cousin of Doctor Craufurd, on the father's side, and as such she claimed to be entitled to letters of administration *de bonis non* upon his estate, to the exclusion of the appellee, William, who was a first cousin, and the nearest male of kin to the intestate on the part of the mother. It was made to appear in the case that the appellant, Mary, was largely indebted on judgments to the estate of the intestate.

Two exceptions were taken in the Orphans' Court by William F. Turner, and appeals prayed thereon, which were heard at the same time with this appeal.

The first exception was to the refusal by the Orphans' Court to hear evidence tending to show that the appellant, Mary, was of unsound mind.

The second exception was to the refusal by said Court to hear evidence, to show that she was old and infirm in health, and physically unable to attend to the management of the business of the estate.

The cause was argued before BARTOL, C. J., NELSON, STEWART, BRENT, GRASON and MILLER, J.

*Thomas F. Bowie,* for the appellant, Mary M. Kearney:

The appellant, Mary, is entitled to administration *d. b. n.* on the estate of Dr. David Craufurd.

1st. Because she is the nearest relation to the decedent on the part of the father, and is therefore *in a class of preferred claimants.* Code of Pub. Gen'l Laws, Art. 93, sec. 29. The rule that males shall be preferred to females in equal degree of kin, (1 Code, Art. 93, sec. 23,) applies only to such as are of a preferred class, as among themselves, but cannot be construed so as to give a male in an unpreferred class, priority to a female in a preferred class; such a construction would destroy altogether the effect and operation of the 29th sec. of Art. 93, Code, which gives a preference to relations on the part of the father over relations on the part of the mother in equal degree of kin. If the appellant, who belongs to a preferred class, had a brother, that brother would be preferred to her, according to the 23th sec. of Art. 93, of the Code.

2d. It is true that there are no next of kin of the decedent nearer than first cousins, and it may be true that none of these would be entitled unless they should apply, but it is equally true, that as soon as they do apply, their rights, according to their respective claims, must be considered and acted on by the Orphans' Court. The Orphans' Court had and can have, no discretion in the matter as long as any of the next of kin are applicants for letters of administration. *Code of Pub. Gen'l Laws, Art.* 93, *secs.* 33, 70.

The appellant, Mary, was the first, and is now, the only one of the next of kin who has actually applied for letters of administration on the estate of the decedent. The order of the Court granting letters to the appellee, William, was passed without any application on his part by way of petition; and if there be any force in the argument of his counsel that in a case of the granting of letters of administration *d. b. n.,* where the next of kin are *collaterals, more remote than brothers or sisters,* as in this case, the Orphans' Court has full discretion, unless the person entitled shall actually

apply, then, it is submitted, that whenever such person shall apply, the discretion of the Court ceases, and the rights of such person must be respected by the Court.

3d. But it is said that "the person entitled," within the meaning of sec. 70, of Art. 93, of the Code, must be construed as among collaterals, to relate only to that class of persons, such as "widow, child, grand-child, father, brother, sister or mother," who are declared as persons entitled by the 33d sec. of the Code, and not to those who *must apply* in order to be considered entitled. But the propriety of this reasoning is not perceived. The Testamentary Code as to the rights of persons entitled to administration, must be construed as a whole, all its provisions must be taken together. By the 22d sec. of the Code, after "widow, child, grand-child, father, brother, sister or mother," the next of kin generally shall be preferred, and then certain rules are prescribed in Articles 23, 24, 25, 26, 27, 28, 29, &c., by which their respective rights are to be determined. When, therefore, a preference is given by sec. 70, to "the person entitled, if he shall actually apply for the same," it must have reference to such persons as are entitled under a proper construction of the above referred to sections of the Code, because by the proper construction of those sections alone, can it ever be ascertained who are the persons entitled. It follows therefore, that in all cases where *an application* is made by any of the next of kin of a decedent to the Orphans' Court, either for letters of administration or for letters *d. b. n.*, the Court is bound to give a preference to the person they may regard as entitled under the foregoing provisions of the Code.

4th. It is very certain that by the provisions of the Testamentary Code, Art. 93, sec. 22, the next of kin are to be preferred, after widow, child, grand-child, father, brother, sister or mother, in all cases of application for letters of administration on a decedent's personal estate. Certain rules are prescribed in reference to the order of preference, as among next of kin. In the present case it is admitted, that Mrs. Kearney

is the only surviving first cousin of David Craufurd, the decedent, on the part of the *father of the decedent*, and that William F. Turner is the only *male* first cousin on the part of the *mother*. The question must be settled by a proper construction of those provisions of the Testamentary Code. It seems to be a new question, and has not been heretofore decided by any adjudged case in this State.

In the first place, let us ask, what is meant by "next of kin?" Can a person be legally "next of kin" to a decedent, who has not within his veins one particle of the *blood* of the decedent? In the case of real estate descending, the law says, it shall descend to the *kindred*, male and female, of the person dying intestate, &c. It is certain that "*kindred*" in that case means blood relations,—relation by *consanguinity*, and not by *affinity*. What real distinction is there between "next of kin" and "kindred?" It is not perceived that any distinction whatever can be drawn. If this be so, then "next of kin" or "kindred," would be construed to mean what is ordinarily understood by the words "heirs-at-law," which, of course, relate only to such blood relations as would inherit real estate, in the case of a person dying intestate. In the present case the appellee can in no proper sense be considered as "next of kin" to David Craufurd. Being only a first cousin through his mother, who was not of the blood of the Craufurds, he can have not a particle of the decedent's blood in his veins, and is not therefore one of the "next of kin" in the sense of our Testamentary Code. He may be, and is, *one of the distributees* of Dr. Craufurd's personal estate but this character he derives from the statutory provisons of our Code, and not from any inheritable blood on his part.

Now, in reference to the appellant, Mary, she is the only heir-at-law as to the realty, and the only surviving "*next of kin*" on the part of the *father*, to the decedent. Is she not therefore, more nearly related by ties of consanguinity to the decedent than the appellee, who is related by no ties of consanguinity whatever? The mother of the appellant was the

sister of Dr. Craufurd's *father*, and through *that father*, in the *ascending line*, to which point, in the ascending line, we have a right to go, she claims the preference given by the 29th section, taken in connection with the 26th, of Art. 93, of the Code.

5th. But it is said that males are to be preferred to females in equal degree of kin. That is all very true, but they must be in equal degree of kin. If our views are correct in regard to the sense in which the words "kin" or "next of kin," are used in our testamentary system, then the appellee, although a "male," is not "in equal degree of kin," and can have no claims on that ground. It is believed that our testamentary system has followed closely, and almost literally, the same rules in relation to rights of *administration* of the personal estate, which exists as to *descents* in cases of real estate. The *blood* of the decedent, in the descending or ascending line, in both instances being the foundation rock on which all questions of controversy are to be determined. But it is submitted very respectfully, that section 23, under which, alone, the appellee claims, has no application whatever to the case before us. Relations on the part of the *father*, whether females or males, having a higher title than those on the part of the mother, a male on the part of the mother must be postponed to a female on the part of the father. It is believed that this section can only be construed to relate to cases where there are males and females in a class of preferred claimants, and, as among themselves, giving a preference to males in that class. Any other construction would completely nullify the 26th and 29th sections. Our construction gives force and efficacy to every provision of the Code.

6th. But it is said by the appellee, that the "26th section puts this question at rest." It prescribes that "none shall be preferred in the *ascending line beyond a father or a mother*, or in the descending line below a *grand-child.*" If this objection be good, it is like a two-edged sword, it cuts both ways; for if the appellant claims through the father, the appellee

claims through the mother, but instead of conflicting with our claim, it supports it. The appellant does not go beyond the father of the decedent, she goes up to the father in the ascending line, and no further, then, in the collateral line, commencing with the father, and through him as *brother* of her mother, she acquires the inheritable blood of all the Craufurds.

7th. As to the question of the indebtedness of the appellant to the estate of Dr. Craufurd, it is believed to be finally closed by the decision of this Court in the recent case of *Cook vs. Carr,* 19 *Md. Rep.,* 1. The case of *Owings vs. Bates,* 9 *Gill,* 463, was a case in which the *only assets* belonging to the estate, was a note due from the person applying, to the decedent, and which he claimed to have paid, and besides, in that case, there had been an agreement among the heirs as to who should administer.

8th. In regard to the rulings of the Court on the subject of the alleged unsoundness of the appellant's mind, for the first time alleged in the answer of the appellee to the petition of the appellant, it is submitted, that the Orphans' Court was right in rejecting the evidence proposed. It was not a question on which the parties were entitled to have issues framed and sent to a jury for trial. Unsoundness of mind is a mixed question of law and fact, and not the subject of issues, upon an application for letters of administration pending in the Orphans' Court. *Smith and Wife vs. Young,* 5 *Gill,* 197.

By the 56th sec. of the 93d Art. of the Code, the Orphans' Court, upon the petition of a person interested, had the right to order a writ *de lunatico* to be issued, to enquire into the alleged unsoundness. This would have been the duty of the Court, had such a petition been filed. In such a case the law gave *express power* to the Court to order such a commission, but it nowhere confers on the Court the power or the duty to hear or receive parol evidence on the subject, and without such an express delegation of power, the Orphans' Court had no jurisdiction to go into such an enquiry in the mode pro-

posed by the appellee. For the above reasons it is submitted, that the order of the Court below, granting letters of administration *d. b. n.* on David Craufurd's estate to the appellee, a stranger in blood, should be reversed, and the cause remanded with instructions to the Court below to grant such letters to the appellant.

*Charles Marshall* and *C. C. Magruder*, for the appellee, William F. Turner:

Our first proposition is, that in a case of granting letters *de bonis non*, where the next of kin are *collaterals, more remote than brothers or sisters*, as in the case at bar, *the Orphans' Court have full discretion.* The granting of letters *de bonis non* is governed by sec. 70, Art. 93 of the Code of Public General Laws. That section allows the Court to appoint at its discretion, with the proviso, that preference shall be given "*to the person entitled, if he shall actually apply for the same.*" What is here meant by "the person entitled?" Recurring to the 33d section, we find that no relations more remote than widow, child, grand-child, father, brother, sister or mother, shall be considered as *entitled* unless they apply. Collateral relations more remote than brothers or sisters, do not then belong to the class *entitled* to administration by law. They are not entitled to notice, and in granting administration the Court need not regard them, *unless they apply.* Now we contend the words "persons entitled" in section 70, include only those persons who are declared to be entitled *de jure,* by section 33, and not to those who *must apply* in order to be considered entitled.

It is contended, on the part of the appellant, that sec. 29, Art. 93, creates a class of preferred persons, and that sec. 23 is to be construed as subject to sec. 29. In this view of the case, a married woman related on the side of the father would be preferred to a *feme sole, or a male* on the side of the mother, thus making sec. 29 control the provisions of secs. 23 and 27. This argument assumes that secs. 23 and 27 do

not create *classes* of persons, as well as sec. 29. It seems to us that males and females, *femes sole* and *femes covert*, are *classes*, quite as clearly distinguished from each other as relations on the side of the father, and relations on the side of the mother; and that the construction which would subject sec. 29 to the two secs. 23 and 27, is more reasonable than that which would subject both the latter sections to the former. If there be any conflict between secs. 23 and 27, and sec. 29, our construction gives effect to *more of the law* than the construction contended for by the appellant, and is therefore to be preferred. For aught that appears, the petitioner in this case may be a married woman, and the construction contended for would give her the preference over a *feme sole* on the mother's side, and over a male on that side, whose right is superior to that of the *feme sole*. Some reason should be shown for this construction, which seems to be based on nothing but the allegation that sec. 29 creates classes, and that secs. 23 and 27 do not. We contend that sec. 23 is intended to divide all persons in equal degree, whether on the paternal or maternal side, into two classes, males and females, of whom the former shall be preferred.

No reason can be assigned for the provisions of Art. 29. It is purely arbitrary, and is not found in the English testamentary system, nor in the statute of distributions. So far as we have been able to ascertain it is peculiar to our own law. The reason for the preference given to males is, clearly, that among persons of equal degree of kin, it is the policy of the law to give administration to the party best fitted to perform the duties of the trust, or who may reasonably be presumed to be best fitted. This policy is further exemplified by the provisions of section 34, which, as among *residuary legatees*, require that males shall be preferred to females, whether those legatees be related *ex parte paterna* or *ex parte materna*.

It is manifest that in this instance the Legislature treats the question of sex as of superior importance to the question

as to which side the relationship may be; and if it be so among residuary legatees, we are warranted in the inference that the Legislature intended that it should be so as among persons of equal degree of kin claiming letters of administration, and that therefore the preference to relations *ex parte paterna* over those *ex parte materna*, given by sec. 29, was not intended to control the policy of the law giving preference to males, as declared in secs. 21 and 34. The Court has fully sanctioned this mode of construing a law in *The Canal Company vs. The Rail Road Company*, 4 *G. & J.*, 128. We think that these reasons justify us in maintaining, that under sec. 29, among persons in other respects equal in right, preference shall be given to the relation on the father's side, but that as between a male on the mother's side, and a female, (it may be a *feme covert* for all the record shows,) on the father's side, the Court will give preference to the male, in accordance with the apparent policy of the law. *Cook vs. Carr*, 19 *Md. Rep.*, 1.

The right of administration between the contestants in this case presents a question which does not seem to have been heretofore decided by this Court, and its decision depends upon the construction of that portion of our testamentary law which confers the right of administration upon the personal estate of intestates. Our testamentary system, as well as that of most of the States of the Union, is founded upon and embraces (on this branch of it,) the statutes of 31st Edward III, ch. 11, and 21st Henry VIII, ch. 5. *See* 2 *Kent's Com.*, 409; *Toller on Executors, p.* 83, *ch.* 3.

In England, in its early history, the goods of an intestate went to the king as the general trustee of the State, but were afterwards transferred to the clergy; and an alleged improper exercise of this right by the clergy, led to the enactment of the two statutes referred to. In all the States of this Union, control over the administration and distribution of the estates of deceased persons has been conferred upon Courts of civil jurisdiction. The testamentary laws of this State have, among other things, given the right to administer upon the estates of

intestates to certain enumerated persons or classes of relatives, the next of kin to the intestate. *See* 1 *Code, p.* 620, *title Administration, Art.* 93. In this case, the right to administer upon this estate by the appellant is predicated upon the 29th sec. of the said Art. 93, which states "that relatives upon the part of the father, shall be preferred to the relatives upon the part of the mother."

It will be conceded that the law intended to confer the right claimed upon a certain class of persons, denominated relatives or next of kin to the intestate, and that independent of the said statute, the right does not exist. Our first inquiry then is, who are the enumerated persons, or class of persons, who can claim this right under the law? They are specifically denominated and described, and the first cousins of an intestate are not mentioned. Does the preference or right then given by the Article to the said relatives, or classes of relatives, extend beyond those expressly enumerated in the law? If the right or preference conferred by the law cannot be claimed independent of its express provisions, then the appellant clearly has no right to letters of administration in this case, as she does not come within the enumerated relatives or class of relatives mentioned in the Article. It is believed that in all the cases which have been before this Court, upon the construction of this law, as to the right of administration on the estates of intestates, and of the powers of the Orphans' Courts of the State, upon the subject, the law confirming those rights and the rights and powers of said Courts, has been strictly construed. The Orphans' Court is limited in its jurisdiction, and cannot exercise a power not expressly given it by law. This is the language of the law creating said Courts, and our judicial decisions in regard to said powers. 1 *Code, Art.* 39, *sec.* 252; *Brodess vs. Thompson,* 2 *H. & G.,* 120; *Smith, et ux. vs. Young,* 5 *Gill,* 197.

It will be seen by the words of the 31st sec. of Art. 93, where discretion is given to the Orphans' Court to grant letters of administration in certain cases, that the law is silent as

to first cousins. They are not mentioned, and although it speaks of the declension of other relatives, after referring to the relatives or classes of relatives mentioned in the preceding sections, the words "other relatives," in said section, must apply to those relatives or class of relatives enumerated in the preceding sections, and omitted in the 31st, such as uncles, nephews, aunts, etc. We respectfully insist that in this view of the law, first cousins have no rights or preference to administration in cases like the one under consideration. If we be right in this construction of the law, the present was a case where the Court, under the 23d sec. of Art. 93, properly decided that the appellant was not entitled to the administration. It may be enquired, how then is the 29th section to be construed if in a case like the present, the paternal relation is not to be preferred to the maternal? We reply, it could only have been intended to apply to a contest, for example, between a nephew or niece on the part of the mother, or nephew or niece on the part of the father; then, under the 29th section, the right to a preference might be claimed by the relative on the part of the father, and thus gratify the requirements of the said section. But we contend, that if the preceding views are incorrect, the 26th sec. of Art. 93, puts this question at rest, and frees it of all difficulty. It prescribes that "none shall be preferred in the ascending line beyond a father or a mother, or in the descending line below a grandchild." The appellant, it must be recollected, claims that she is to be preferred to the appellee as to the right to administer, because she is the first cousin in the paternal line; and before such a preference can be successfully maintained, it must be shown, we apprehend, that the preference intended to have been conferred by this section is *unlimited,* and must be extended to all cases where relationship can be traced. Such a construction, we think, would be considered a violation of the express prohibition to be found in the 26th sec., which limits the preference or right to administer in the ascending line to a father or mother. The appellee claims relationship to the decedent in

the ascending line, and the right and preference conferred by said section is limited and confined to a degree of relationship nearer to the intestate than the appellant stands. This right or preference cannot be extended, by the very words of the Article, beyond the father or mother. The appellant, therefore, is not one of the enumerated relations, or of the classes of relations having a right or preference to administer in this case. All the sections of this Article must be construed together, and such a construction given them as will harmonize and give effect to all its provisions. If it be said that under this rule of the law neither the appellant nor the appellee can claim the administration as a right, or upon the ground of a preference because of the degree of relationship under the 26th section, we reply, that their applications then became subject to the operation of the 23d section of the 93d Article, which says, "that males shall be preferred to females in equal degrees of kin," and under that rule of the law, the Court below properly decided that the appellee was entitled to administration — the two standing in equal degrees of kin, and the law in such cases giving the preference to the male relative. We respectfully submit, that a different construction of the sections of the Article, from that we have attempted to give, would cause a conflict between the sections to which we have referred. For if the appellant is to be preferred because of the construction contended for by her counsel under section 29, we ask how is the 23d section to be disposed of? The contestants stand in the same degree of relationship to the decedent. They are in equal degrees of kin, in the language of the said section, and occupying the same degree of relationship, the male relative is to be preferred; Cook vs. Carr, 19 Md. Rep., 1; where this section has received a construction. We cannot see the policy of extending the preference claimed under the 29th section of the Article, by an enlarged construction of it beyond the limits prescribed by the 26th section. No such difference was made between relations in equal degree under the English statutes referred to, nor by the Courts in

construing said statutes; but the relations mentioned in the 29th section, under the English law, that is, relatives by the father's side and the mother's side in equal degree of kindred, are equally entitled to administer. *Toller on Executors, ch. 3, p. 91, 4th Amer. Ed.; Blackboro vs. Davis, 1 P. Wms., 53; 2 Bl. Coms., 505.*

We shall briefly consider the questions arising upon the appeal taken by the appellee in this case from the decision of the Orphans' Court in rejecting and refusing to hear and admit the proof proposed to be offered on the part of the appellee, the object of which was to show the incompetency of the appellant to discharge the duties of the appointment she sought, and which, in our view, was clearly admissible under sec. 52, of Article 93, of the Code, and ought to have been received. *Jennings vs. Pendergast, 10 Md. Rep., 346.* For if the appellee could have shown by the testimony proposed to be offered, that she was of unsound mind, and mentally and physically unable to discharge the duties of the appointment, then the Court should have rejected her application, under the section of the Code referred to; and the appellee might have required and had a right to require the Court to frame issues and send them for trial, involving these alleged disabilities. The appellee's counsel intended, in the course of the examination of witnesses, if they had deemed it necessary, to have applied for such issues, but the Court rejected the proof, and decided in effect that they were not entitled to have issues framed upon the question of the alleged unsoundness of mind of the appellant; but the inquiry could only be made by a writ of *de lunatico inquirendo,* to be issued by the Circuit Court or Orphans' Court of the county, under the 56th sec. of the 93d Art. of the Code. We think that the 56th sec., referred to, does not apply to the case. Its language is only that such a writ *may* be issued from said Courts, but we have been unable to find a case like the present, where such a proceeding has taken place; and it is assumed that such a writ, in a contest like

the present, has never been resorted to; but that the practice has been, in all similar cases, to frame issues and send them for trial as prescribed by the sections 249 and 250, of Art. 93. And this Court has determined that in all controversies before the Orphans' Court, involving issues of fact, the proper course is to proceed according to the said sections, and if required by either party they should be sent in the form of issues to be tried by a jury. We submit, therefore, that the Court erred in rejecting said proof and in making said decision. *Smith, et ux. vs. Young*, 5 *Gill*, 197; *Pegg, et al. vs. Warford*, 4 *Md. Rep.*, 385; *Mills vs. Humes' Ex'rs.*, 22 *Md. Rep.*, 346.

The appellee further insists, that the application for administration in this case should be refused the appellant, because of her large indebtedness to the estate of the said intestate, which the proof shows amount to $5,000, and upwards, upon judgments on which executions have been issued and returned *nulla bona*.

In the case of *Owings vs. Bates*, 9 *Gill*, 463, the Court determined, that such an objection was a valid one, and that it was against the policy of the law to grant administration to a party who stood in the relation of debtor and creditor to the estate, and we think that the reasoning of the Court in that case is decisive of this. But it is supposed the case of *Cook vs. Carr*, 19 *Md. Rep.*, 1, removes this objection, and it must be determined by this Court whether that case overrules the case in 9 *Gill*, referred to, or militates against it. We contend that the two cases do not conflict. In the first place, the fact of the alleged indebtedness of the party in the case of *Cook vs. Carr*, was not proved as it was in the case before the Court; and in the case of *Cook vs. Carr*, the Court decided that the Orphans' Court, in a case where two or more persons are equally entitled to administration, may, in its discretion, grant letters to either party. The opinion in this case does not refer to the case of *Owings vs. Bates*, 9 *Gill*, 463, nor

does it appear to have been cited by the counsel for the appellee, and may possibly have been overlooked. We do not consider that the principle of that decision has been repudiated by the decision in *Cook vs. Carr,* and must be regarded as establishing a rule of law controlling the action of the Orphans' Court in cases like the one now under consideration.

BARTOL, C. J., delivered the opinion of this Court.

In disposing of this appeal, it is unnecessary to express any opinion upon the effect of the renunciation of William F. Turner, or the power of the Orphans' Court to allow its withdrawal. Conceding that the appellee is correct in the view that under the circumstances, there was no error in permitting the renunciation to be withdrawn; then the question is presented as between the appellant and appellee, which of them is entitled to the administration. The solution of this question depends upon the true construction of the provisions of our testamentary law regulating the right of administration. Both the contestants are first cousins of the intestate, Dr. David Craufurd; the appellant being related on the side of his father, and the appellee on the side of his mother. By the Code, Art. 93, sec. 22, it is provided "that if there be neither widow, nor child, nor grand-child, nor father, nor brother, nor sister, nor mother, *the next of kin* shall be preferred." By the subsequent sections rules are prescribed, fixing the order of preference among next of kin. The appellee claims to be entitled under the 23d sec. which declares "that males shall be preferred to females in equal degree of kin." While the appellant claims under the 29th sec., which provides that "relations on the side of the father shall be preferred to relations on the side of the mother in equal degree." These rules are supposed to be in conflict. It is very apparent, if the appellant and appellee stand in equal degree of kin to the intestate, in the sense in which those terms are used in the 22d section, there would be some difficulty in

reconciling those two provisions of the Code. Being incon-sistent, one or the other of them would have to be disregarded in this case, unless we should adopt the view of the appellant, and say that by the 29th section, relations on the part of the father are designated as a preferred class, while section 23 must be construed as referring to individuals, and not to a class; thus all persons related on the side of the father, whether male or female, are preferred to relations in equal degree on the side of the mother, while as among persons belonging to the same general class, that is, among those re-lated on the side of the father, or on the side of the mother, males are preferred to females. This is a reasonable con-struction, consistent with the language of the law, making its several provisions consistent with each other, and giving them all their proper operation and effect. We do not rest our opinion, however, upon this construction alone. In our judg-ment the term " *next of kin* " as used in the 22d section, is to be understood in its legal sense as meaning *kindred*, the word used by the law of descents. *Code, Art.* 47, *sec.* 1; and im-porting heirs-at-law, relations by consanguinity, or of the blood of the decedent.

The provisions of the Code regulating the right of admin-istration follow very closely the law of inheritance, which is departed from in several particulars in the statute of distri-butions. Construing the words *next of kin*, in the 22d sec. of the 93d Art., as meaning kindred, or heirs-at-law, which we think is its real signification and import, it follows that under that section, as well as under the 29th section, the appellant would be entitled to the preference over the appellee in right of administration. The application was for administration, *de bonis non*, the first administrator having died; and we have been referred by the appellee to the 70th section of Art. 93, which, it is contended, gives power to the Orphans' Court to appoint, within its discretion, among collaterals re-lated in the remote degree which these parties held to the deceased. That section provides " that letters *de bonis non*

Kearney *vs.* Turner.

may be granted at the discretion of the Court giving preference, however, to the person entitled, if he shall actually apply for the same." It has been argued that the terms "*person entitled*," as used in this section is to be construed as applicable only to those near relations enumerated in the 33d section, as absolutely entitled; and not as referring to the more remote relations, who, by that section, are declared not to be considered as entitled unless they shall apply. We do not concur in this view. The whole Article of the Code must be construed together. As by the 22d section it is expressly provided that among collaterals the next of kin are to be preferred, without regard to the remoteness of their relationship, it seems to be clear that where such next of kin makes application for letters *de bonis non*, she being by law the person entitled on application, such letters ought to be granted to her and cannot properly be refused at the discretion of the Court.

The evidence offered by the appellee showing that the appellant was indebted to the estate of the deceased, did not furnish any sufficient ground upon which the Orphans' Court was authorized to deprive her of the administration. This point was expressly decided in *Cook vs. Carr*, 19 *Md. Rep.*, 1. Upon the exceptions to the ruling of the Orphans' Court taken by the appellee, this Court is of opinion that there was no error. By the Code, Art. 93, sec. 56, the mode is prescribed, in which the Orphans' Court may have the question of alleged unsoundness of mind of a party entitled to administration, tried and determined, by issuing a writ *de lunatico inquirendo;* that Court had no power to examine proof on that subject, or to try and decide the question. Being a Court of special jurisdiction it is prohibited from exercising any constructive or incidental powers not expressly conferred by law. *Art.* 93, *sec.* 252.

The Code having directed the manner in which such questions are to be tried and determined, the Orphans' Court was correct in refusing to entertain the inquiry in any other way.

The order of the Orphans' Court granting letters to William F. Turner, will be reversed with costs to the appellant, and the cause remanded for further proceedings in accordance with the opinion of this Court.

*Order reversed and cause remanded.*

(Decided 20th March, 1868.)