## HOWARD V. MOBLEY ET AL. *v.* WILLIAM J. MOBLEY.

*Letters of Administration—Person Entitled—Mental and Physical Incapacity—Waiver of Rights—Delegation of Administrator's Duties.*

Under Code, art. 93, secs. 17, 53, 57, a near relative who has been declared a lunatic is not qualified to act as administrator.

p. 404

Where the intestate's next of kin are a surviving brother and a half-sister, the appointment as administrator of the brother is not the subject of appeal, if he possesses the requisite qualifications.                                                   p. 404

A niece and nephew of intestate are not entitled to the grant of letters of administration, if there is a surviving brother who is not incompetent and who has not declined to administer.

p. 405

One applying for administration by sworn petition to the orphans' court does not impliedly renounce or waive his right of administration by simultaneously filing a power of attorney to another to act as his agent in the administration of the estate.                                                    pp. 405, 406

An executor or administrator may, within certain limitations, delegate his authority as personal representative to an agent, such a delegation of authority being expressly recognized by Code, art. 93, sec. 7, providing for the examination on oath of an agent employed in the administration of an estate.

pp. 406, 407

A power of attorney to one to act for another in the administration of a decedent's estate is inoperative if executed, delivered, and filed five weeks before the grant of letters of administration to the person giving the power.                           p. 407

One does not lose his right to administer because he gives a power of attorney to another to act for him in the administration, even though the power is so comprehensive as to include non-delegable functions of an administrator.                          p. 407

The orphans' court has no power to declare a party who is otherwise entitled to administer to be of unsound mind, and so disqualified, but the law exacts that this be first adjudicated under a writ *de lunatico inquirendo*, issued by either the circuit court or the orphans' court on the petition of any person interested.                                                          p. 408

In Code, art. 93, sec. 31, providing that in the absence of certain classes of relations named, "or if these be incapable, or decline, or refuse to appear," or if other relations and creditors shall neglect to apply, administration may be granted at the discretion of the court, the word "incapable" does not add a fresh disqualification, but refers to disqualifications already existing, created by sections 17 and 53, and does not include physical incapacity.                                           pp. 408-410

The orphans' court is not justified in refusing to appoint as administrator one who is otherwise qualified, merely because he is paralyzed and has been in bed for some months, his mind being clear, and his mental processes intelligent, and the assets being such as to entail no onerous duties on the administrator.

p. 411

*Decided January 12th, 1926.*

Appeal from the Orphans' Court of Frederick County.

Petition by William J. Mobley for letters of administration upon the estate of Clarence D. Mobley, deceased. From an order appointing said petitioner administrator, Howard V. Mobley and Nina R. Hall appeal. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Leo Weinberg,* for the appellants.

*William M. Storm,* with whom was *Frank L. Stoner* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

Clarence D. Mobley died a resident of Frederick County on April 12th, 1925, intestate, and possessed of personal estate whose value is estimated to be about seven thousand dollars. He was unmarried, and his next of kin were his brother, William J. Mobley, a resident of Frederick County, and a half sister, Alice D. Mobley, who was an adjudged lunatic, and a nephew and a niece, Howard V. Mobley and Nina R. Hall, who were non-residents of the State of Maryland, being in Washington, D. C., and a nephew, E. Keefer Mobley, of Baltimore, and an infant great niece and two infant great nephews, whose three names do not appear in the record.

The nephew and niece, Howard V. Mobley and Nina R. Hall, first applied for letters of administration upon his estate, and the brother followed with a similar application, which was accompanied by a purporting power of attorney from the applicant. This power of attorney was undated and anticipated his appointment, since it was executed as administrator by the brother to his own daughter, Exie E. Yingling, whom he attempted to constitute his agent "with full powers to collect all debts due the said estate; pay all debts due by the said deceased, make all returns to the

Orphans' Court for Frederick County, settle accounts with said court; in short, to do and transact all such business as may be necessary to a full and complete administration of said deceased estate." The application of the nephew and niece was objected to by the brother on the grounds that they were non-residents of the State of Maryland and a degree further removed from the intestate than the brother in kinship. The nephew and niece, in turn, protested the appointment of the brother. They alleged that he was incapable of acting; and, in effect, had so admitted by the execution of the power of attorney, which was asserted to be equivalent either to a renunciation or a waiver of his right to administer. These petitions and objections came on for hearing, and testimony was taken before the Orphans' Court of Frederick County, and reduced to writing. The court held, upon the proof, that the petitioner, William J. Mobley, was competent and qualified; and by its order of June 1st, 1925, appointed him the administrator. From this order, Howard V. Mobley and Nina R. Hall, brother and sister, have appealed.

The intestate's next of kin in degree of relationship were the surviving brother and half-sister. As the half-sister had been declared a lunatic under an inquisition held before the death of the intestate and was thereafter kept in confinement by reason of her continuing insanity, she was unqualified. *Richardson v. Smith*, 80 Md. 94, 97; *Kearney v. Turner*, 28 Md. 408, 425, 426; *Code* (1924), art. 93, secs. 17, 53, 57. But if she were not mentally incapacitated, the male is preferred to a female, and the whole blood to the half blood of the class formed by the kin standing in an equal degree of relationship to the intestate; and, therefore, the appointment of the brother would not be the subject of an appeal, if the brother be possessed of the requisite qualifications. *Code* (1924), art. 93, secs. 21, 23, 24; *Cook v. Carr*, 19 Md. 4; *Georgetown College v. Browne*, 34 Md. 457; *Bowie v. Bowie*, 73 Md. 234; *Kailer v. Kailer*, 92 Md. 149; *Dorsey v. Dorsey*,

140 Md. 170; *Covey v. Charles,* 49 Md. 314; *Richardson v. Smith,* 80 Md. 94, 97.

The appellants as niece and nephew are two members of a class of four, who are one degree further removed from kinship with the intestate than is his brother, the appellee. The appellants were, therefore, not entitled to the grant of letters of administration under the circumstances of this record, unless the brother was incompetent under the law or had declined, expressly or impliedly, to administer. *Code* (1924), art. 93, sec. 22; *Williams v. Addison,* 93 Md. 45; *McColgan v. Kenney,* 68 Md. 259.

The appellee did not formally renounce his right to administer, but his attempted nomination of an agent to perform the duties of his administratorship is affirmed by the appellants to have been either an implied renunciation or a waiver of his right to administer. There is no sufficient foundation for this contention. Apart from all other considerations, the appointment in writing of the daughter as appellee's agent, although undated, was executed and filed simultaneously with his sworn petition and application for the grant of letters of administration to him, and after the appellees had filed their petition and application with the Orphans' Court of Frederick County.

Instead of disclaiming any intention to administer, the petitioner was at once enforcing his superior right through the appropriate procedure, and resisting the appointment of the nephew and niece. He can not be said to have intended either to renounce or to waive what he was then avowedly and determinedly seeking. His action and the proceedings were not susceptible of the construction that he was renouncing any right. The agency, which is sought to be made equivalent to a renunciation or a waiver, was itself in terms explicitly dependent upon the grant of letters of administration to the appellee and pre-supposed the prior appointment of the appellee as administrator. The proposed delegation was an assertion of the principal's power arising through a grant to him of the right to administer, and from

its inherent nature such an act cannot be construed to be a
renunciation or a waiver of the right to a status, which the
donor was anticipating, but nevertheless in the course of
asserting, when he executed the document in question. *Brodie
v. Mitchell,* 85 Md. 516, 519.

In the prematurely executed power of attorney, the appel-
lee was exercising the authority with which he believed he
would have been clothed as the administrator of the intes-
tate, and this was quite a different thing from an express
renunciation of the right to be appointed administrator or
from one implied from conduct, amounting to a waiver or
estoppel, of the party entitled, as is illustrated by those cases
relied upon by the appellants. *Slay v. Beck,* 107 Md. 357;
*Slay v. Beck,* 108 Md. 72; *Brodie v. Mitchell,* 85 Md. 516;
*Stocksdale v. Conaway,* 14 Md. 99, 106, 107; *Evans v. Igle-
hart,* 6 G. & J. 171; *Thornton v. Winston,* 4 Leigh (Va.),
152; *Hoffman v. Gold,* 8 G. & J. 89; *Ex parte Young, Admr.,*
8 Gill. 285; *Carpenter v. Jones,* 44 Md. 625; *Thomas v.
Knighton,* 23 Md. 326; *Georgetown College v. Browne,* 34
Md. 450.

It has long been recognized in this state that an executor
or administrator may, within certain limitations, delegate
his authority as a personal representative to an agent. He
may, for instance, employ counsel to act in legal affairs and
in collections (a); an overseer to finish the growing crops
of the decedent (b); or an agent to rent the property of the
estate (c), or to collect its claims, or to assist in other min-
isterial duties (d). In fact, the case of *Eversfield's Execu-
trix v. Eversfield's Representatives,* 4 H. & J. 12 (1815), is
an illustration of settlements of accounts having been made
for an executrix in the Orphans' Court of Prince George's
County by her agent as a matter of course. And the pre-
amble to chapter 131 of the Acts of 1823, conferring author-
ity upon the orphans' court, "wherever they are satisfied that
an agent has been employed in the administration of the
estate of a deceased person by an executor or administrator
or executrix or administratrix, to examine such agent on

oath of all proceedings which may have taken place relative to the administration of the estate of any deceased person in which such an agent may have been employed, in like manner, as they are now authorized by the act to which this is a supplement to examine executors or administrators," recited that the occasion for the enactment was the great frauds which had been practiced by the employment of such agents, "who are not compelled by law to make any return of their proceedings to the several orphans' courts in this state and cannot be examined by said courts, on oath, as to their proceedings." This statute is now codified as section 7 of article 93 of the Code (1924). (a) *Ward v. Koenig,* 106 Md. 433, 436; *Sonneborn v. Hutzler,* 134 Md. 424, 435; *Ex parte Young,* 8 Gill, 285, 287; *Estate of Young,* 3 Md. Ch. 461, 475. See *Gwynn v. Dorsey,* 4 G. & J. 453. (b) *Lee v. Lee,* 6 G. & J. 316; *Sullivan v. Tuck,* 1 Md. Ch. 59. (c) *Handy v. Collins,* 60 Md. 229, 235. (d) *Eversfield's Executrix v. Eversfield's Representatives,* 4 H. & J. 12. *Mechem on Agency* (2nd ed.), secs. 312, 315, 316.

The power of attorney in the instant case was inoperative because it was executed, delivered, and filed on April 25th, 1925, and letters of administration were not granted to the appellee until five weeks later. *Ratrie v. Wheeler's Executor,* 6 H. & J. 94. But even if it had been executed after the appellee's selection and qualification as administrator, the instances last cited of the valid delegation of power by an executor or administrator illustrate the point that the nomination of an agent to act for an administrator in his representative capacity is in no sense a denial of the donor's desire and right to continue to act as an administrator of his decedent's estate, nor equivalent to his renunciation or waiver of his office. And should the grant of power be so comprehensive as to include non-delegable functions of an administrator, the validity of the document itself might be affected, but the donor's right to administer would not be lost.

2.   The appellee is, therefore, entitled to administer, if he have the qualifications. Neither indebtedness to the intestate (a); nor separation, without divorce, of the spouses (b); nor withdrawal from the world into a religious order (c); nor inability to read or write (d); nor insolvency or non-residence (e); nor old age or bodily infirmities (f), are sufficient alone to disqualify. *Bagby on Executors and Administrators,* secs. 29, 30; *Cook v. Carr,* 19 Md. 1; *Kearney v. Turner,* 28 Md. 425.   (a) *Kailer v. Kailer,* 92 Md. 150. (b) *Nusz v. Grove,* 27 Md. 400; *Willis v. Jones,* 42 Md. 425; *Whiting v. Shipley,* 127 Md. 118.   (c) *Smith v. Young,* 5 Gill, 203, 206.   (d) *Nusz v. Grove,* 27 Md. 401. (e) *Willis, Admr., v. Jones,* 42 Md. 426.   (f) *Kearney v. Turner,* 28 Md. 409, 425.

The disqualifications of any one seeking to be appointed as administrator are specified by statute law.  Code (1924), art. 93, secs. 17 and 53.  The orphans' court must not grant letters of administration to any person, who, at the time of the application, is (*a*) under the age of eighteen years; (*b*) or of unsound mind, incapable according to law of making a contract; (*c*) or convicted of any crime rendering him infamous according to law; (*d*) or not a citizen of the United States.  And the orphans' court has no power to declare a party, who is entitled to administer, to be of unsound mind, incapable of making a valid deed or contract, but the law exacts that this be first adjudicated under a writ *de lunatico inquirendo* issued by either the circuit court or orphans' court on the petition of any person interested.  Code (1924), art. 93, sec. 57; *Kearney v. Turner,* 28 Md. 425; *Wheeler v. Stifler,* 82 Md. 649; *McCaughy v. Byrne,* 115 Md. 89. This writ, however, was not sought in the proceedings before the orphans' court, but the contention was made that section 31 of article 93 of the Code enlarged the disqualifications, so as to include not only mental, but also physical, incapacity. This section is: "If there shall be neither husband, nor wife, nor child, nor grandchild, nor father, nor brother, nor sister, nor mother, or if these be incapable, or decline, or

refuse to appear on proper summons or notice, or if other
relations and creditors shall neglect to apply, administration
may be granted at the discretion of the court."

The paragraph quoted is at the end of a series of sections
merely enumerating the classes in succession entitled and
preferred in the grant of letters of administration. The
word "incapable" found in this final section is not employed
to add a fresh disqualification for those otherwise eligible to
administer but is a reference to already existing disqualifi-
cations, which are created by sections 17 and 53 and which
have universal application, whether the petitioner be a near
or distant kinsman, a creditor or any other stranger to the
blood. If the point made by the appellant be allowed, the
application of the clause "if *these* be *incapable*" would be
confined to husband, wife, child, grandchild, father, brother,
sister and mother of the intestate, who constitute only some
but not all of the whole class eligible for selection. This
consideration alone indicates the incongruity involved in the
position of the appellants and is sufficient to establish that
the meaning ascribed by the appellants was not in the legis-
lative language nor mind when it passed the great Act of
1798, chapter 101, containing the provisions now under dis-
cussion in substantially the same form in which they subsist
in the Code. Acts of 1798, chapter 101, sub-ch. 4, secs. 4-5,
sub-ch. 5, secs. 23, 7.

The word "incapable" in section 31 is, therefore, a descrip-
tive term, and was used to avoid the repetition of the disquali-
fications, which are now specified in section 53 of article 93
of the Code, but which originally preceded section 31, as will
appear from a reference to the Act of 1798, chap. 101, sub-
chap. 4, sec. 1 (section 53), sub-chap. 5, sec. 23 (section 31).
The matter was before the Court in the case of *Kearney v.
Turner* (1868), 28 Md. 408, where evidence was offered tend-
ing to show that the appellant, Mary M. Kearney, was unqual-
ified to act as administratrix because she was, first, of unsound
mind, and, secondly, "old and infirm in health, and physically
unable to attend to the management of the business of the

estate," p. 409.    The orphans' court rejected this testimony,
and on appeal the two rulings were affirmed, the Court say-
ing: "Upon the exceptions to the ruling of the orphans' court
taken by the appellee, this Court is of opinion that there
was no error.   By the Code, art. 93, sec. 56 (now section 57)
the mode is prescribed, in which the orphans' court may have
the question of alleged unsoundness of mind of a party, en-
titled to administration, tried and determined, by issuing a
writ *de lunatico inquirendo;* that court had no power to
examine proof on that subject, or to try and decide the ques-
tion.   Being a court of special jurisdiction it is prohibited
from exercising any constructive or incidental powers not
expressly conferred by law.    Article 93, sec. 252.    The
Code having directed the manner in which such ques-
tions are to be tried and determined, the orphans' court was
correct in refusing to entertain the inquiry in any other
way."

It will be noted that this Court treated the two exceptions
as embodying the same legal question, although the first
proffer of evidence related to the mental condition of the
applicant, and the second to her physical capacity.   As no
one may be declared of unsound mind because of physical
incapacity, and as the evidence offered under the second excep-
tion would have been admissible, if physical incapacity had
been a disqualification under the statute, it is manifest that
this Court did not consider physical incapacity a distinct
ground to refuse letters of administration.

The case of *Stouffer v. Stouffer,* 110 Md. 368, is relied
upon by the appellants, but in that case the Court simply
stated that the appellant did not fall within any of the dis-
qualifications specified in section 53 of the Code and then
added, "Nor was he 'incapable' within the meaning of section
31 of art. 93 of the Code."   Nowhere in the opinion is it
stated that the incapacity contemplated in section 31 is any
different from the incapacity of section 53, and we find no
solid basis for the argument that this last-named decision, or
any other, supports the appellants' conclusion in reference

to the meaning of the law. Section 31 simply provides for the contingencies of the non-existence of certain preferred degrees of relationship; or, if existing, of their failure as a class from which to choose through either being incapable, or declining or refusing, after summons or notice, to appear. The incapacity, however, is the statutory incapacity of section 53, and the standard of capacity remains mental soundness or the capacity to make a valid contract.

Frequently physical infirmity results in, or is associated with, mental incapacity, but so long as mental capacity remains sufficient for the execution of a valid deed or contract, a party may successfully assert his right to the grant of letters of administration, *supra*.

3. We have reviewed the facts on this record which were before the orphans' court, and we do not differ from their conclusion.

Although the appointee was paralyzed so as to deprive him of the use of his right side, and had been in bed for some months before his appointment, except when daily taken from the bed so as to have it made up, yet the proof is he could have been taken to Frederick and carried before the orphans' court. He could read and, before his paralysis, could write. All agree that his mind was clear and his mental processes remained intelligent. He was an owner of property and had a complete grasp of the nature and amount of his dead brother's estate, which was principally personalty in the form of liquid assets. There was a deposit of $5,500 in bank; a note of $900 which the debtors were ready to pay; some small amounts payable as death benefits by several fraternal associations; and one or two judgments which the testimony indicated are probably barred by limitations. Such assets entailed no onerous duties upon an administrator. If the brother was willing to assume whatever physical risks were incident to the administration, the orphans' court had no duty nor power to deny him his legal rights because the orphans' court may not have thought he was acting prudently.

If, after his appointment, the administrator should fail in

the performance of his duty as administrator, the orphans' court has ample power to remove him, and his bond gives full protection to the distributees and all other parties in interest.

*Order affirmed, with costs to the appellee.*