DAVID HOFFMAN *vs.* PETER GOLD.—*June, 1836.*

The testamentary system admits no power of delegation in any person entitled to administration of the estate of a deceased party.

The act of 1819, ch. 187, which declares that when any seaman, &c. *shall die* intestate, &c. letters of administration upon his estate shall be granted in preference, to some officer of *The Charitable Marine Society,* having no words giving it a retrospective operation; there being nothing in the nature of its enactments to demand it; and neither the interests of the Society nor the security of the claim being dependent upon it, can according to its language only have a prospective operation.

The testamentary laws have made provision for every case to insure an administration with promptness. If a party dies leaving very near relations, they are to be summoned, if within the *State,* or an effort is to be made to summon them; more remote relations and creditors next have the

preference, *if they apply.* In the absence of such application, the court can exercise a discretion, and in doing so, should undoubtedly, as a general rule pursue the policy of the system, and commit administration to the person having the greatest interest in the estate.

In 1835, application was made by an officer of *The Charitable Marine Society,* for letters of administration on the estate of a seaman, who died abroad in ———. This was resisted by H, having the funds of the deceased in his hands, and claiming to retain a portion of it for services rendered. The deceased having no kindred. *Held,* that H, on proving himself to be a creditor would be entitled to administration; and that in the absence of such proof, the *Orphans' Court* could grant letters in their discretion.

The presumption of slavery arising from colour, upon an application for administration of an estate, is sufficiently rebutted in relation to the grant ᐟof letters, by the fact that the deceased engaged in a voyage to foreign ports as a sailor, that his wages which constituted the known part of his estate had been recovered at law in his name, and not been claimed by any owner after the lapse of many years.

The master or owner of a slave may recover from one to whom letters of administration had been granted, and who had recovered in that character property due for the services of such slave.

APPEAL from the *Orphans' court* of *Baltimore* county.

On the 16th December, 1835, *Peter Gold* filed his petition charging that *Clement Oakes,* a mariner, belonging to the port of *Baltimore,* shipped as a seaman on board the ship Warren, which sailed out of the aforesaid port ·in the year 1806, on a voyage to the *Pacific Ocean,* where the vessel arrived, but was seized by the Spanish authorities, and the crew made prisoners; that wages for said voyage have been recovered for, but not received by said *Oakes;* that he is dead, intestate and without next of kin, as far as appears in the *United States,* and that it has become the duty of the court, to grant letters of administration upon his estate, in preference, to some officer of the *Charitable Marine Society of Baltimore,* upon conditions prescribed in the act of 1819,— that the said *Gold* is an officer of said society, and has made his application within ten days after notice of the death of said *Oakes,* has been left at the office of the *Register of Wills* for *Baltimore county,* and publication thereof for five days in in one of the daily newspapers, printed in the *City of Baltimore.* Prayer for letters of administration on the estate of said *Oakes.*

The appellant appeared in the Orphans' court, and filed objections to the granting of letters as prayed to *Peter Gold,* and insisted that if any letters were granted they should be issued to the appellant.

He admitted *Oakes'* death, &c. urged in substance, that the claim of *Oakes* to wages, was prosecuted by him at great expense and cost in the *District, Circuit* and *Supreme Court of the United States,* from the years 1810 to 1832, he set forth the various expenses to which he had been put in relation to the claim of this and the other seamen of the ship Warren, exceeding the sum of $9,000—that his compensation was contingent; that on the recovery of the claims, he had made great efforts to discover the parties, their heirs and representatives—that he had paid off most of the claimants or their representatives, and was willing and ready to pay the others—that the *Marine Society* had no claim to the fund, and he claimed to retain the fund subject to his demands for reimbursement of advances made in the prosecution of *Oakes'* claim for wages, and his compensation as proctor—that in addition to his character of proctor, he was trustee of the fund and had executed a bond in the penalty of $20,000 for the due performance of the trust—that he claims a preference in the administration of the unsettled estates in his hands—first as *creditor* and secondly as *trustee*—that *Oakes* was a slave—his master's name unknown—that he had settled many of their cases upon highly liberal terms, expecting that others of them would never be called for—in many cases making no charge, &c. that as proctor, trustee and creditor, he is sole owner in law and equity of this fund, until called for by the actual owner and his legally proved heirs—personal representatives, assignees or agents—that the proof of the claimant is defective.

After proof taken on both sides, which is sufficiently adverted to in the opinion of this court, the *Orphans' court* decreed, that letters ought to be granted to some officer of the *Charitable Marine Society of Baltimore,* and as it was admitted that *Gold,* was an officer of that society, letters were

decreed to him, on his giving bond with security and taking the oath required by law. From this decree the said *David Hoffman* appealed.

The cause was argued before BUCHANAN, Ch. J. and STEPHEN, ARCHER, and CHAMBERS, Judges.

The act of 1819, ch. 187, declared, that when any seaman or mariner sailing from or residing in the port of *Baltimore,* shall die intestate and without heirs, as far as appears, in the *United States,* letters of administration upon the estate of such seaman or mariner shall be granted in preference to some officer of *The Charitable Marine Society of Baltimore;* provided that such officer shall make application for the same within ten days after the notice of the death of such seaman or mariner, shall be left at the office of the *Register of Wills for Baltimore county,* and publication made thereof at least five days in some newspaper printed in the *City of Baltimore.*

MAYER and R. JOHNSON, for the appellant, contended:

1. That there was no sufficient evidence of a dying intestate and without heirs of the said *Charles Oakes,* within the meaning of the act of 1819, ch. 187, as entitled the appellee to administration on his estate; nor any evidence of a general or habitual sailing by him from the port of *Baltimore,* which proof it is insisted is essential to the appellee's claim for letters.

2. That under the circumstances of the case, the appellant was entitled to administration.

3. That the evidence shows that *Oakes* died a slave, and of course that no administration could be granted on his estate.

4. That the act of 1819, under which alone the *Marine Society* can and do claim the administration, is altogether *prospective* and applicable only to cases of mariners dying intestate and without heirs, subsequent to the passage of that act; and of course admitting, that there is a sufficiency of

evidence, that *Oakes* died intestate and without heirs, as it also proves that the death was long prior to that act, the right of administration is to be decided independent of it, and under the general testamentary act, and consequently that appellee was not entitled to the administration.

WILLIAMS (*District Atty. U. S.*) for the appellee, contended.

1. That there is sufficient evidence of the dying intestate and without heirs, as far as appears in the *United States*, and that they sailed from the port of *Baltimore*.

2. That the appellant has shown no claim to administration—because the prior right of the society prevails against creditors—because no evidence that the appellant is a creditor—and his answer admits he is a debtor.

3. That there is evidence that *Oakes* was a free man and none that he was a slave.

4. That the society are entitled by the act of 1807, ch. 123, to the property left by said seaman; and in being so entitled the Orphans' court ought to grant the letters of administration to an officer of that society, because of its superior interest in his estate.

5. That the act of 1819, ch. 187, is not prospective only.

CHAMBERS, Judge, delivered the opinion of the court.

The only question brought before this court by the record, is, whether the Orphans' court under the circumstances of this cause, should have passed the decree ordering letters to be delivered to the appellee.

In the view we have taken of the cause, it will be entirely unnecessary to decide upon the right of *The Charitable Marine Society*, to be considered as sole distributee, but that right may be assumed, to give the utmost effect to the appellee's argument.

It is contended, that the appellee is entitled to letters as matter of right. That the act of 1807, ch. 123, gives the estate of the deceased to the society. That by the policy of

the testamentary system, as adopted and declared by this court, the right of administration should follow the right to the estate, and therefore the appellee is entitled of right, as the appointee and agent of the society. We cannot admit the conclusion.

The testamentary system admits no power of delegation in any person entitled, and if it cannot be exercised by the nearest of kin, who is most favoured, in this respect, it will be difficult to sustain a claim for such a power by this corporation.

It is said however, that the act of 1819, ch. 187, expressly confers the right of administration upon an officer of the society appointed for that purpose, and that the object and language of that act, will justify its application to a case originating before its passage.

There are no words it that act giving it in terms a retrospective operation; there is nothing in the nature of its enactments to demand it, nor are the interests of the society, or the security of the claim dependent upon such a construction. On the contrary, the act professes to provide a rule for cases, in which the death of the party should thereafter occur, and by considering it entirely prospective, its letter is gratified; the established rule of construction obeyed, and the society for any demand it may have, can resort to the ample security—the administration bond; which the Orphans' court is bound to exact in every case, for the very purpose of protecting both creditors and distributees.

We do not think therefore, that by any positive provision, or any constructive principle of law, the appellee can demand letters as matter of right. Neither was it a case for the discretion of the court. The testamentary laws have made provision for every case, to insure an administration with promptness. If the party died leaving very near relations, they are to be summoned if within the *State,* or an effort is to be made to summon them; more remote relations and creditors next have the preference, *if they apply.* In the absence of such application, the court can exercise a discre-

tion, and in doing so, should undoubtedly as a general rule, pursue the policy of the system and commit administration to the person having the greatest interest in the estate.

The peculiar language of the paper filed in the Orphans' court by the appellant, makes it doubtful whether he intended it as an application for letters. It would rather seem to be a *caveat* against the grant of letters to the appellee, upon the grounds distinctly stated in the fifth of his reasons, and which relate to the title of the fund claimed by the appellee as the agent of the society.

The title to that fund was not a proper subject for that court, in that form, at that time.

Conceding that the case is within the act of 1807, so as to entitle the society to the estate ultimately, yet as the death of the party occurred before 1819, the creditor, "if he applied," was entitled to letters in preference to an agent or officer of the society.

There would seem however to have been an error in this respect, common to the court and to both the parties.

Letters were claimed by the officer and agent of the society, upon the ground of their title to the estate of the deceased. The application was resisted upon the ground that the society had no legal claim to the fund in the hands of the appellant, and the decree of the court, although it does not in terms declare the title of the society to be the reason why letters are ordered to be granted to the appellee, does allege expressly, that letters ought to be granted to some officer of the society, and orders them to be issued to the appellee, because he is admitted to be one of its officers.

This erroneous assumption may account for the fact, that there is no proof given to shew, that the appellant is a creditor, although it is manifest from the statement filed by him in the Orphans' court, that he must have expended large sums of money, and much time and labour in establishing the claims of the deceased, the proceeds of which claims, constitute the funds in his hands.

But the nature of the appellant's claim upon these funds, or the trust in virtue of which he holds them, cannot affect the question now before us.

This court cannot know, nor can the Orphans' court, whether there be other property or effects of the deceased, nor can any litigated question affecting the right to these funds be determined in this mode.

If the appellant shall insist on his right to letters as a creditor, he will not lose the opportunity to protect the rights of property, in, or over this fund, and if failing to apply or to prove himself a creditor, letters shall be granted to the appellee, the question of property will still be open to both parties, and all the rights of the appellant may be defended without prejudice from the act of the court granting letters.

The cases so nearly resemble each other, that we have deemed it unnecessary to remark on either, separately. The most material point of distinction which was taken in the argument, was in relation to *Clement Oakes,* who is proved to be a coloured man, and in regard to whom, it is thence urged that his colour is presumptive evidence of his being a slave. Whatever might be said, if the issue was a direct one, as to his slavery or freedom, upon which we mean not to express an opinion, we think that the fact of his engaging in the voyage as a sailor, the absence of any claim by an owner, and the recovery of wages in his name stated by the petition, and not denied by the *caveat,* are facts sufficient to repel that presumption, so far as to justify an administration to be had of his effects; considering that the rights of his master or owner may be enforced, if any such rights exist against the administrator.

Believing as we do, that the death of the parties is sufficiently established, we shall remand the case, with directions to the Orphans' court to grant letters to the appellant, if he shall apply for the same and prove himself a creditor—otherwise to grant letters at their discretion.

*Decree of the Orphans' court reversed with costs, and record remanded accordingly.*

DECREE REVERSED.