THE PRESIDENT AND DIRECTORS OF GEORGETOWN
COLLEGE, THOMAS S. WILSON and ELLEN M. N.
WILSON, his Wife, *vs.* CHARLES C. BROWNE.

*Right of Administration—Letters Testamentary or of
Administration not to be granted to a Corporation—
Residuary legatee.*

Letters testamentary or of administration will not be granted to a corpora-
tion; nor will a corporation, when named executor, be allowed, accord-
ing to the English practice, to designate a person to receive administra-
tion, with the will annexed.

In this State the right of administration cannot be delegated.

B executed her will in 1844, by which she devised and bequeathed her
entire estate to L, whom she appointed her sole executor. L died
before B, leaving a will by which he gave all his property in posses-
sion, and all to which he might be in anywise entitled, to Georgetown
College, a corporation by virtue of an Act of Congress. Subsequently
in 1867, B died leaving her will unchanged. She left neither husband,
father, child nor grand-child, but a brother and married sister. On the
question, to whom should letters of administration on the estate of B, be
granted, it was HELD:

1st. That the College was not residuary legatee under the will of B, and
could claim no right to administer on that ground; and being a cor-
poration, it would have been excluded from administration, even if B
had devised all her property to it directly.

2d. That under section 34 of Article 93, of the Code of Public General
Laws, the brother of B was entitled to letters of administration with the
will annexed, on her estate.

APPEAL from the Orphans' Court of Baltimore City.

On the 15th of August, 1844, Mary E. Browne made her
will, devising and bequeathing all her property to the Rev.
Thomas Lilly, and appointing him her sole executor. On
the 4th day of May, 1850, the Rev. Thomas Lilly, who was
a Catholic Priest of the Society of Jesuits, devised all his

property of every description, then owned or that might be owned by him at the time of his death, or in which he then had or might thereafter have any interest, to the appellants, the President and Directors of Georgetown College, a corporation in the District of Columbia, incorporated by Act of Congress in 1844, and appointed them his executors. In 1863, and during the lifetime of Mary E. Browne, the Rev. Thomas Lilly died without revoking this will, and after his death, his heirs-at-law and legal representatives conveyed to the college all their title to and interest in his estate. Mary E. Browne died 22d of April, 1867, without revoking her will, and it was admitted to probate in common form by the Orphans' Court of Baltimore city, where the testatrix resided at the time of her death. Subsequently the appellee filed a *caveat* and amended *caveat* against it. These were duly answered by the President and Directors of Georgetown College—issues were asked for by the appellee—granted by the Orphans' Court — transmitted for trial to the Superior Court of Baltimore city, and finally decided by the jury in favor of the college. Thereupon the appellants, the President and Directors of Georgetown College, as executors named in the will of the Rev. Thomas Lilly, and as the owners under his will of the property devised to him by the will of Mary E. Browne, applied by petition to the Orphans' Court of Baltimore city for letters of administration *c. t. a.*, upon the estate of the said Mary E. Browne, and being a corporation, named the appellants, Thomas S. and Mrs. Wilson, as such administrators.

Mrs. Wilson was a sister of the testatrix, and the appellee her only brother.

Upon this state of facts the majority of the Court below (Judge DANELS dissenting) passed an order dismissing the petition of the college and refusing to appoint Dr. and Mrs. Wilson such administrators, being of opinion that the appellee as next of kin of the testatrix was entitled to be made administrator.

From this order the petitioners, the President and Directors of Georgetown College and Thomas S. and Mrs. Wilson, appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MAULSBY, GRASON, MILLER and ALVEY, J.

*John P. Poe* and *I. Nevett Steele*, for the appellants.

The devisees of Thomas Lilly took under his will all the property devised to him by the will of Mary E. Browne, notwithstanding she survived him; or, in other words, the devise to him did not lapse in consequence of his death in her lifetime. *Code of Pub. Gen'l Laws, Art.* 93, *sec.* 304; *Magruder vs. Carroll,* 4 *Md.,* 335; *Alexander vs. Worthington,* 5 *Md.,* 471; *Wilson vs. Wilson,* 6 *Md.,* 487.

The appellee, as next of kin to his sister, Mary E. Browne, is not entitled to administration under sections 21 and 23 of Article 93 of the Code of Public General Laws, because these sections relate exclusively to cases of intestacy, and have no application whatever to a case like the one in. question, where there is a will and an executor named in it who died before the testatrix.

This case is to be governed by the provisions of section 34 of Article 93. And, inasmuch, if Mary E. Browne had named no executor and had died before Father Lilly, he, as sole legatee under her will, would have been entitled to administration, so in like manner the parties, who under his will succeed as his devisees to the estate devised to him by her will, are entitled to administration on her estate as a necessary incident to their title as his devisees. *Ex parte Young,* 8 *Gill,* 286; *Hoffman vs. Gold,* 8 *G. & J.,* 79; 1 *Williams on Executors,* 402, *et seq.*

Accordingly his executors and devisees, the President and Directors of Georgetown College, are entitled to administration; and being a corporation could validly appoint the appellants, Dr. and Mrs. Wilson, as their agents or repre-

sentatives for this purpose—which appointment is in no sense a *delegation* of their right, as a majority of the Court below assumed, but is in legal contemplation a mere selection by them of agents to execute their trust. 1 *Williams on Executors*, 198, 199, (*side.*)

If it be held, that section 34 of Article 93 of the Code does not regulate this case, then there is no statutory provision upon the subject—and we are, therefore, remitted to the English practice governing such a case; under which the appellants' petition would have been granted. 1 *Williams on Ex'rs*, 402, *et seq.*

*Robert J. Brent*, for the appellee.

The residuary devise to Thomas Lilly, being protected notwithstanding his death in the lifetime of the testatrix, by the Code, Article 93, section 304, can his residuary legatee, Georgetown College, claim the preferred right to administration, conferred by the Code, Article 93, section 34? This last section clearly prefers the *residuary legatee* of Mary E. Browne, if any there be.

But as Thomas Lilly died before her, it is equally clear that no claim can be made in behalf of her residuary legatee; but it is said that inasmuch as Georgetown College is the *residuary legatee* of Thomas Lilly, the right which was personal to him has passed to the college. This claim is answered by the case of *Young*, 8 *Gill*, 286, which decides that the preferred right of administration is personal and cannot be delegated. If Mr. Lilly had survived the testatrix, he could not have assigned his personal right, neither can he assign it by his will, to take effect at his death.

Article 93, section 304, merely prevents the lapse and vests the property in the deceased legatee, as if he had survived, and conceding that he may alienate or devise his *expectancy* before it can vest in him, yet he and he alone is the *residuary legatee* of the testatrix, and his assignee or devisee is not invested with the character which applies to him alone.

It is one thing to claim preperty as assignee of the deceased residuary legatee, and another thing to be substituted to his personal rights which cannot in the nature of things survive.

That the college cannot administer as a corporation is conceded; but it is claimed that it can name persons to administer in its place, who are called Syndics by the English law. No such practice or officers are recognized in Maryland. There is no residuary legatee *in esse* to administer, but only an assignee of the title of the residuary legatee, and therefore the appellee was rightfully appointed administrator under the Code of Public General Laws, Article 93, sections 21 and 23.

MILLER, J., delivered the opinion of the Court.

Mary E. Browne executed her will in 1844, by which she devised and bequeathed all her property, real and personal of every kind and description, to Thomas Lilly, whom she also appointed her sole executor. Lilly died *before the testatrix,* leaving a will by which he gave all his property in possession, and all to which he might be in any wise entitled, to the president and directors of Georgetown College, a corporation in the District of Columbia, incorporated by Act of Congress in 1844. Subsequently, in 1867, Miss Browne died, leaving her will unchanged. The real question in dispute is, who is entitled to letters of administration on her estate? or, in what mode, or by what rule shall such letters be granted? though the particular order appealed from is an order dismissing the petition of the college claiming the right to designate the party to be appointed, or, if no such right exists, then praying that letters may be granted to a sister of the deceased and her husband. The party on the other side, who claims that he is entitled by law to have letters granted to him, is the appellee, the sole surviving brother of the testatrix; she having died, leaving neither husband, father, child nor grandchildren.

It is very clear the corporation is not residuary legatee under this will, and can claim no right to administer on that ground. Its right to the property is derived solely from the will of Thomas Lilly, and his estate is not the estate to be administered upon. But even if the will of Miss Browne had devised and bequeathed all her property directly to this corporation, it could not have claimed administration, because we take it to be well-settled, that a corporation cannot become an executor or administrator ; nor has the English practice of allowing a corporation, when named executor, to designate a person styled a syndic, to receive administration with the will annexed, ever prevailed in this State, but, on the contrary, all power of delegation over the right has been expressly repudiated and denied by our Courts. All *right* of the corporation, and all *right* of its appointees as such to administer, being out of the case, the question recurs, has the surviving brother of the testatrix, who appears and claims the appointment, any right by law thereto ?

The case is one where a testatrix has left a will, and the party named as executor therein has died before the will took effect, thus calling for the grant of letters of administration with the will annexed, in the first instance, and where the residuary legatee under the will has also died before the testatrix. Is there any provision of our testamentary law covering such a case, or is it a *casus omissus* in which the grant of letters must be left to the discretion of the Orphans' Court, to be guided and controlled by the general policy of the system which requires the right of administration should follow the right to the estate? In our opinion, the case is provided for by the statute. The Code, (Article 93,) in its arrangement of the testamentary law under the sub-division "administration," which extends from sections 14 to 40 inclusive, embraces the provisions for administration and the order of preferences between the next of kin. Amongst these, sections 21 and 23, which provide that brothers and sisters shall be preferred, if there be no widow, child, grand-child or

father, and that males shall be preferred to females in equal degree, would, it is conceded, extend to this case if it were one of intestacy. But are all these provisions confined to such cases? We think not. In immediate connection with them is to be found section 34, (which is also placed in the same connection in the original law of 1798,) by which it is declared, that "*if letters of administration, with the will annexed, are to be granted,* and there be a residuary legatee or legatees in such will, he or they shall *be preferred* to all except a widow, and it shall be incumbent on the Court to proceed in the manner directed by law with respect to executors within the State, *before* administration shall be granted *to any other person;* and a male residuary legatee shall be preferred to a female." The purpose, intent, effect and true construction of this section are to be ascertained by reading it in connection with antecedent and subsequent provisions upon the same subject. Its meaning and effect, when thus read and considered, appear to be thus: The law having, in previous sections provided for the grant of letters of administration generally in cases of intestacy, and having defined with great exactness and particularity who should be entitled, and what order of preference should exist and be observed, provides in this section for a class of cases, numerous and of frequent occurrence, where letters of administration, with the will annexed, must be granted in the first instance, as where no executor is named in the will, or where as here the party so named may have died before the testator, and in that event the direction is, that the residuary legatee, if there be one, " shall be *preferred* to *all* except a widow," that is, to all who are entitled to preference by the prior sections except the widow, and it is made incumbent on the Court, before administration shall, in such cases, " be granted to any *other person,*" that is, to any other person who, but for the intervention of the legatee, would be *entitled* to administer, to have a summons issued for the residuary legatee, as provided in section 44 for the case of an executor within the State. In other

words, when cases of this kind arise, the Orphans' Court are directed to grant letters in the first place to the widow, if she chooses to take them—next, to the residuary legatee, if there be one, preferring males to females; and if there be no such legatee, or none capable of acting, or if, on being summoned, he shall fail to appear and give bond, then they are to proceed and grant the letters to the other persons designated in the preceding sections, observing the order of preference there prescribed. This reading is not only in our opinion warranted by the language of the section itself, but makes, and is essential to make, the entire system uniform and complete.

A brief consideration of the provisions of some of the subsequent sections will, we think, make it apparent the Legislature intended such should be its construction and effect. Thus, in section 43, if an executor, present at the probate of the will, fails to give bond or take out letters in another county, letters of administration, with a copy of the will annexed, may be granted in the county wherein was the probate, "to such person as they might be granted to in case of intestacy." And in section 44, if an executor, not present at the probate, is within the State, and fails to appear to the summons as there provided, "letters of administration may be granted as aforesaid," that is, as in cases of intestacy. The same provision is also contained in section 45, and substantially also in section 46. Again, in section 47, it is provided, that if the executor renounces, "there may be the *same proceedings* with respect to granting letters testamentary or of administration, as if the party so renouncing *had not been named in the will.*" And in sections 52, 56 and 58, where an executor is disqualified or incapable of acting, or is a married woman, and her husband fails to give bond, the direction in each case is, to grant letters testamentary or of administration "in the *same manner* as if such person *had not been named in the will.*" Is it not apparent from this that the Legislature supposed they had prescribed the *mode* and *manner* of granting letters of administration, with the will annexed, in cases

where no executor or no competent executor was named in the will? And yet no such provision is to be found in the law, unless it is contained in this section 34. We have no doubt that, in each of sections 44, 52, 56 and 58, reference is made to section 34 for the mode and manner of proceeding, and we have as little doubt that the law-makers never imagined any construction could be placed on that section, by which, in this large class of cases, the Orphans' Court could act in their absolute discretion, if there was no widow or residuary legatee claiming or capable of taking administration. Discretion is very sparingly confided to that tribunal, and whenever conferred, it is given in express terms, and in very restricted cases. Thus, section 31 provides, that only when there shall be neither husband, nor wife, nor child, nor grand-child, nor father, nor brother, nor sister, nor mother, or if these be incapable or decline or refuse to appear on proper summons or notice, or when other relations, and creditors shall neglect to apply, can administration be granted at the discretion of the Court. By section 68, letters of administration, *pendente lite*, may be granted to the person named executor, *or* to the person to whom the largest portion of the personal estate may be bequeathed in the contested will, *or* to the person who would be entitled to letters by law *as in cases of intestacy.* And by section 70, if an executor or administrator die before completing his administration, " letters *de bonis non,* or *de bonis non cum testamento annexo,* may be granted at the discretion of the Court, *giving preference,* however, to the *person entitled,* if he shall actually apply for the same," that is, to the person entitled to preference by the antecedent sections, from 18 to 30 inclusive, as well as section 34. These provisions, without reference to others, show how cautiously discretion is limited, how carefully the rights of persons entitled are preserved, and the designated order of preference made to apply to cases of testacy as well as intestacy, and in fact made to control the grant of administration even in the most unimportant and temporary cases. In a

system of law like this, which was undoubtedly designed to cover every case, an important *casus omissus* ought not to be readily assumed or even allowed, if, by any reasonable construction, it can be avoided, especially not where the result of allowing it would be to enlarge an irreviewable discretion, which, in other and less important particulars, the Legislature has seen fit to restrain and confine to the narrowest limits.

We are also of opinion the construction we have placed on this section derives support from the views of our predecessors. Thus, in *Hoffman vs. Gold*, 8 *G. & J.*, 84, the Court say : " The testamentary laws have made provision *for every case* to insure an administration *with promptness.* If the party dies, leaving very near relations, they are to be summoned, if within the State, or an effort is to be made to summon them ; more remote relations, and creditors next have the preference if they apply. In the absence of such application, the Court can exercise a discretion, and in doing so, should undoubtedly, as a general rule, pursue the policy of the system, and commit administration to the person having the greatest interest in the estate." And again, in *ex parte Young*, 8 *Gill*, 286, it is said : " The appointment and the rights of administrators are regulated by law. There must be some sufficient reason in designating the particular parties in their order to whom the administration of the estate is committed ;" and the *first* reason why the custodiary is thus distinctly designated, is " to *prevent litigation* about the possession."

Before concluding, it may be observed, that 'in the case before us, if it were one resting in the discretion of the Court, the policy of the system could not be carried out, because, in no event, can administration be committed to the corporation to whom the entire estate belongs, so that letters must be granted to some one who has no interest whatever in the property. The Court was not bound to regard the mere *wishes* and *preferences* of the officers of the college as between the sister and her husband and the brother of the deceased testatrix, and treating the order dismissing their petition as a refu-

sal by the Court to heed those wishes, the appeal should be dismissed, because, in this view of the case, the order was merely the exercise of a discretion over which this Court has no revisory power.

But we rest our decision upon no such ground. We are entirely satisfied the construction we have given to the statute is correct, that the appellee has *by law the right* to this administration, that no sufficient reason is disclosed in the record for depriving him thereof, and accordingly, and for that reason, we affirm the order appealed from.

*Order affirmed.*

(Decided 20th June, 1871.)