## ORPHANS' COURT OF BALTIMORE CITY

Filed March 8, 1893.

IN THE MATTER OF THE ESTATE OF SUSAN E. TAW, Deceased.

*Amos F. Musselman* and *Edward Otis Hinkley* for petitioner.

*Charles H. Wyatt* and *A. S. Goldsborough* for executor.

GANS, J.—

This is an application to the Court by petition of John M. Beam, brother of the testatrix, praying for the revocation of the letters testamentary on the estate of the said Susan E. Taw, granted to Abraham Taw, her husband, on the ground that he was, at the time of the granting of said letters an alien subject of the British Government, and still continues to be such alien and subject of the English Government, he having never become a legally naturalized citizen of the United States, although he had filed his intent to become such in the Superior Court of this city.

The petition alleging this fact is duly answered by the respondent, Abraham Taw, which answer concedes the charge thus made, but claims that the Orphan's Court, in view of other facts and reasons, has notwithstanding that, the discretion to continue the said Abraham Taw in the office of executor and allow him to complete the administration of the estate. The appointment was made March 13, 1889, but the point of alienage was not then made, nor was the Court informed of the fact.

No testimony was taken in the case, the main facts being admitted by the respondent; there remains therefore only the point of law, namely, as to whether, under sections of the Code, 52 and 55 of Article 93, relating to the subject of alienage, the Orphans' Court possessed the jurisdiction to continue the said Abraham Taw, as executor, or was not constrained, upon his alien character coming to its knowledge by petition; to revoke the improvident grant of the letters?

In view of the fact that the administration has almost reached its end, there being comparatively little remaining to be done, the Court would naturally feel disposed to allow the executor to continue and complete what he had commenced. There is no objection made to the executor, as such, nor to the manner in which he has thus far discharged his trust. His capability, honesty of purpose and efficiency in his work are fully conceded. His legal qualification under the statutes is the only question that is properly raised, and the only one which we feel called upon to decide at the present time.

The fifty-second section of the Code, Artice 93, reads as follows: "If any person named as executor in a will shall be, at the time when administration ought to be granted, under the age of eighteen years or of unsound mind, incapable according to law of making a contract, or a convict of any crime rendering him infamous according to law, or if any person named as executor shall not be a citizen of the United States, letters testamentary or of administration (as the case may require) may be granted in the same manner as if such person had not been named in the will."

The 55th section has reference to the mode in which the citizenship of such persons shall be established, and it is not necessary that we should quote it in detail.

Clearly, in the judgment of the Court, the whole question here turns narrowly upon what may be conceived to be the true construction of the law as laid down in the 52nd section, and this mainly upon the proper sense of a single word. What is the meaning of the word "may," followed by the words "be granted in the same manner as if such person has not been named in the will?" It looks, at first sight, as though the legislature meant to say, "or may not," giving the Court discretionary power to do either, or to do or not to do. Studying, however, more carefully, first, the decisions of the Court of Appeals in reference to the discretionary power of the Orphans' Court, and second, the general structure of this statute relating to alienage, in connection with many other statutes of similar character, too numerous to be mentioned here, we are constrained to conclude that such construction of the word "may" would not and could not carry out the intent of those statutes, and that the only construction that would or could do this is to take the word "may" in these statutes to mean "must" or "shall."

In the famous Georgetown College case, 34 Md. 458, the Court lays down the rule very definitely, by which this and similar statutes are to be construed. The Court says "that discretion is very sparingly confided to that tribunal" (meaning the Orphans' Court), "and whenever conferred, it is given in express terms, and in very restricted cases."

There are no "express terms," giving discretion, in this statute, and we are therefore, constrained under this rule to conclude that no discretion is or was intended to be given by the word "may." The statute gives the Court power or jurisdiction to do a certain thing in the case of alienage, but not to do otherwise, much less contrary wise.

The power given is to do *this*, but not *that*, or the opposite; and with this power is coupled the *duty* to do definitely that to which the power points out and nothing else, less or more.

This construction, we think, is fully sustained by the general structure of the statute itself. The word "May" refers to the person under the age of eighteen years, of unsound mind, and the criminal convict, as well as to the alien, and all in reference to the same office, executor or administrator, and no one would say that in the case of the three preceding persons the word "May" meant to give the Court discretion to appoint either of them in spite of their legal disability thus fixed upon them. Why should it be thought that the word "May" was in-

tended to create an exception in favor of the alien? There can be no good reason for such discrimination. Our opinion is that the word "may" here means "must" or "shall," and that we have no discretion to do otherwise than as pointed out by the statute in the case.

It is, therefore, ordered and decreed this 7th day of March, 1893, that the letters testamentary of the said Abraham Taw be, and the same are hereby revoked, and that the costs be paid out of the estate.