IN RE ESTATE OF YOUNG.

[Cite as In re Estate of Young, 4 Ohio App. 2d 315.]

316

*Mr. John H. Lewis,* for appellants.

*Mr. Arthur G. Wesner,* for appellee, Deborah Wiegand, executrix.

DUFFEY, J.  This is an appeal from an order of the Probate Court of Franklin County appointing the appellee, Deborah Wiegand, as executrix of the estate of Olive E. Young, deceased.  Appellants are eight nieces and nephews of the decedent who are named legatees under the will.  The issue presented is whether the Probate Court abused its discretion in determining that appellee was a suitable, competent person to be appointed as the fiduciary.

The decedent died August 7, 1959.  Her will was first admitted to probate on August 29, 1959.  The appellee, her sister, was appointed as executrix.  A rather protracted administration followed, and was eventually set aside on jurisdictional grounds on March 23, 1962.  On April 4, 1962, a second administration was commenced.  Appellee was again appointed executrix.  This administration also proceeded through numerous steps, and was also eventually set aside.  A third administration was commenced May 8, 1963.  Appellee again applied to be appointed executrix.  The appointment was protested.  A hearing was had before a referee, and appellee's appointment was recommended and confirmed by the court.

Decedent had six brothers and sisters and 12 nieces and nephews.  The will was executed some three months before her death from cancer.  It was prepared by appellee's husband who is not an attorney.  The will is best characterized as an "attorney's delight," creating far more problems than it solved. Some of these problems bear on the appellee's suitability as a fiduciary.

The will contained four major specific bequests found in Items Six, Seven, Ten and Eleven. Item Six is a devise of real estate to appellee which, on its face, is absolute and unconditional. However, Item Twelve of the will provides in part:

"In addition, I direct and charge that at least two-thirds of any monies accruing to my beneficiary from the sale of the property bequeathed in Item Six shall be placed in a trust fund and used for the education of the children of Elizabeth Phalin, my niece. Deborah Wiegand, my sister, and Carl J. Wiegand, my brother-in-law, shall be the trustees of said trust fund. One-third of the monies shall be used by the beneficiary for payment on the home of Elizabeth Phalin, my niece, provided title to said home is held by Elizabeth Phalin, my niece."

In a previous aborted proceedings, a referee's report stated that this language was precatory only and did not create a testamentary trust on the devise. In our opinion, the language presents a question on the creation of a testamentary trust. The previous proceedings in this estate and the present proceedings show that appellee has refused to recognize that any trust was created and considers the bequest in Item Six as belonging to her absolutely.

A similar trust problem is presented by the devise to Iris Anderson in Item Seven, although the applicable language used in Item Twelve is not as explicit. While appellee has no personal economic interest in the Anderson bequest, both issues will, of course, be litigated in the same proceedings.

Item Eleven is a bequest of "my savings accounts" to the decedent's nephews and nieces, share and share alike. Item Twelve also contains a direction that these funds be used by the legatees for payments on their homes, "and/or" for the education of their children. This provision should also be clarified in proper proceedings. However, in this instance the question of appellee's suitability does not arise from the possible conflicts between Items Eleven and Twelve of the will. Rather there are other facts which place appellee in a personal position which is directly adverse to any claimant under the will.

The transcript shows that at both the time of the drafting and execution of the will, and at death, the decedent had no savings accounts which were held solely in her own name. However, she did have a large number of joint and survivorship

savings bank accounts and certificates of deposit. Various members of decedent's family were listed as joint owners on these accounts. The evidence shows that the funds in these accounts were contributed in full by the decedent. Two of the bank passbooks were in decedent's possession in her home at death. The other books were found in the decedent's safety deposit box. Appellee is listed as joint and surviving owner on two of these savings accounts amounting to some $12,000. Her daughter is listed on others amounting to about $11,400. Iris Anderson was listed on an account amounting to some $10,000.

The transcript also indicates that decedent had a checking account upon which appellee was also listed as the joint and surviving owner. As with the savings accounts, appellee concedes that all funds were deposited by the decedent. Appellee testified that the decedent set up and used the checking account to pay her bills, always writing the checks herself, and that appellee never drew on the account in the decedent's lifetime.

The proceedings in the two previous aborted administrations show that it is appellee's present contention that she, her daughter and Iris Anderson owned these funds absolutely and in their own right by virtue of the survivorship provisions in the accounts. However, any such claim is subject to doubt.

Ohio statutes on joint and survivorship accounts operate for the benefit of the bank only and do not affect the ownership of the account as between the parties thereto.

"* * * where one has created an account with his own money and has then made another a joint owner with right of survivorship, 'an intent to transfer a present interest in the fund must be shown.' * * *." *Fecteau* v. *Cleveland Trust Co.* (1960), 171 Ohio St. 121, at 124.

The form of the deposit is not conclusive and the circumstance that either may withdraw is not dispositive of the issue of ownership. In addition to the *Fecteau case*, see *Bauman* v. *Walter* (1953), 160 Ohio St. 273; *Union Properties, Inc.*, v. *Cleveland Trust Co.* (1949), 152 Ohio St. 430; *Nichols* v. *Metropolitan Life Ins. Co.* (1941), 137 Ohio St. 542. An excellent review of the Ohio law as to personal rights in such accounts can be found in the dissenting opinion of Judge Taft in *In re Estate of Evans* (1962), 173 Ohio St. 137, at 143.

Decedent also owned at her death a very large quantity of United States government bonds, registered either as joint and survivorship or "P. O. D." It might be noted that the *Evans case* involved United States government bonds. Judge Taft clearly considered that the rights between individuals were not controlled by federal regulations, but were subject to the same rules as bank accounts. Appellee was registered on some $30,000 of such bonds. See, also, Items Ten, Twelve and Thirteen of the decedent's will.

Strong personal animosity has arisen among appellee and the other members of decedent's family. This apparently has arisen since and because of the manner in which the two previous aborted administrations of the estate were handled. No doubt much of the aggravation was created by the delays within those administrations as well as that which resulted when they were set aside. Specific complaints have arisen from mistakes made in the computation, payment and reimbursement of death taxes. Upon a review of the proceedings, we believe that the appellee's treatment of the joint and survivorship property was lacking in the candor which her fiduciary position demanded. While the form and content of various documents filed with the court might well have been primarily the responsibility of appellee's counsel at that time, this does not account for the failure to fully inform all members of the family of the nature and circumstances of the decedent's holdings, particularly where at that time those members of the family were not represented by counsel. We wish it to be specifically noted that the present counsel for appellee became active in these proceedings at a rather late date, and we imply no criticism whatsoever of his conduct or handling of the estate's affairs.

Ohio law with respect to the appointment of executors and administrators is not extensive. In a few states, statutes deprive or have been interpreted as depriving a court of any power or discretion in the appointment of a named executor. A few limit the court to certain specified grounds set forth in a statute. See annotation, 95 A. L. R. 828. However, most states give the court a reasonable discretion, and the most frequent provision is that the applicant be a "suitable" person.

Language in earlier Ohio statutory provisions was on its face very narrow, specifying only that the person be "compe-

tent.'' Some of the earlier cases considered the law as requiring appointment of a named executor unless the person was legally incompetent, *i. e.*, an idiot, an insane person, a minor, etc. See discussion and cases in Addams & Hosford, Ohio Probate Practice & Procedure, 5 Ed., 564. However, the present statute is derived from a 1935 amendment which added the specific provision that the person appointed shall be ''suitable.'' This amendment was intended to clarify and confirm the power of the Probate Court to exercise reasonable discretion in the appointment of the fiduciary. The present statute is Section 2113.05, Revised Code, which provides:

''When a will is approved and allowed, the Probate Court shall issue letters testamentary thereon to the executor named in such will, if he is suitable, competent, accepts the trust, and gives bond if that is required. Otherwise, the court shall grant letters of administration with the will annexed to some suitable person.''

Compare a similar ''suitable'' qualification found in the statute on preferential order of appointment for administrators. Section 2113.06, Revised Code.

In our opinion, Section 2113.05, Revised Code, grants the Probate Court the authority to exercise reasonable discretion in determining if an applicant for letters testamentary is a competent and suitable person, and an order granting or refusing letters is reviewable for abuse of discretion. See *In re Estate of Bowman* (1957), 76 Ohio Law Abs. 597.

Several general principles might be mentioned. In the appointment of a named executor, unlike that of an administrator, the deference due the testator's expressed desire is a factor. This, of course, cannot be formulated as a rule with precise application. Rather it represents an attitude of mind in determining the suitability or, as here, in reviewing a claim of an abuse of discretion. It would seem, too, that where the circumstances would justify a removal from office if appointed, then initial appointment could be refused. By this it is not meant to suggest that an obligation to remove is the sole criterion for refusal to appoint but simply that there is an analogy between the two problems. Arguably, a court should be more cautious in ordering removal than in refusing appoint-

ment. See *In re Estate of Watkins* (1944), 114 Vt. 109, 41 A. 2d 180.

It is also clear that the mere fact of a personal interest which is adverse and antagonistic to that of the estate or of the beneficiaries of the estate is not alone and, as such, a disqualification for appointment. See 18 A. L. R. 2d 633, at 634. The Ohio statutes recognize that an executor or administrator may have a claim against the estate. In Section 2117.02, Revised Code, there is provision for the fiduciary to present such a claim, subject to rather stringent requirements of notice and procedure. In Section 2117.03, Revised Code, provision is made for the appointment of a disinterested person to represent the estate against the fiduciary's claim. On the other hand, a debt due to the estate by the fiduciary must be inventoried, and the fiduciary is liable for it. See Section 2115.12, Revised Code. However, it must be recognized that such claims for or against the estate are ordinarily rather distinct transactions easily separable from the main stream of administration and fiduciary obligations. These particular transactions do not generally involve issues of title and ownership, construction of the will, priority of bequests, etc.

It is equally clear, particularly in states like Ohio where suitability is a criterion, that "an adverse interest or standing may warrant or require the refusal of the appointment, depending upon the nature or extent of such interest, the relationship of the parties, or other circumstances involved in the particular situation." 18 A. L. R. 2d 633, at 635. See, also, cases cited in Addams & Hosford, Ohio Probate Practice & Procedure, 5 Ed., 566. In this connection, specific reference is also made to the removal provisions of Section 2113.18, Revised Code, which states:

"The Probate Court may remove any executor or administrator if there are unsettled claims existing between him and the estate, which the court thinks may be the subject of controversy or litigation between him and the estate or persons interested therein."

In view of these principles, no specific rule capable of certain application to all cases can possibly be developed. However, the general criteria are most apparent. The fiduciary nature of the executor's position is clear and the obligations

which arise out of that confidential relationship are apparent. The law generally requires that a fiduciary be a person completely disinterested, both personally and as between beneficiaries. On the other hand, the law gives deference to the confidence a testator has placed in a particular person. This is particularly appropriate where the fiduciary is to exercise personal judgment on investments, business management or, as with testamentary trustees, the distribution of funds. The "suitable" provision of the statute deals with the problem, apparent in this case, of a conflict between these two policies of the law. In our opinion, it contemplates that to be suitable a person must be reasonably disinterested. Where adverse and antagonistic interests conflict with the fiduciary position, the question becomes one of weighing the degrees of conflict under all the surrounding circumstances. The present case includes almost every element that any court has ever considered as a ground for disqualification.

The appellee here does not have merely an ordinary creditor's claim against the estate. She has a claim to title and ownership. Her position on this is antagonistic not only to the estate as such but is directly adverse to legatees and beneficiaries under the will. The amount involved, both as such and in relation to the decedent's assets as a whole, is very substantial. She also holds a position as a devisee antagonistic to the beneficiaries of a possible testamentary trust. Her daughter is in an equally adverse position in relation to the other possible legatees and beneficiaries. Appellee would be less than human if she did not favor her daughter's interest as against other possible beneficiaries. The antagonisms growing out of the previous administrations are enhanced by the close family relationship among the numerous persons who are interested in this estate. It is perhaps true that appellee should not be held personally responsible for much of the irritating legal aspects and "backfilling" during the course of the previous administrations. If not fully advised on joint and survivorship law, it is understandable that she would not feel any obligation to fully inform the family and court on surrounding circumstances. Yet these things have combined to create intense hostility and distrust among the various parties. Personal hostility among the interested parties, while not a controlling matter, is cer-

tainly a factor to be given weight. See Addams & Hosford, Ohio Probate Practice & Procedure, 5 Ed., 568.

It appears that substantial quantities of the disputed funds have already been distributed. Any decision against the appellee, her daughter and Iris Anderson would impose personal hardship in providing reimbursement for the proper distribution. It is apparent that there must be serious litigation of a complex nature undertaken in this estate both in declaratory judgment and will construction. It is also apparent that appellee must be deeply involved personally in that litigation.

Appellee has every right to assert her personal claims as owner and devisee. We do not suggest that she has acted in any way to deliberately harm any person or group. However, the fiduciary obligations as executrix impose upon her a trust which places her in a confidential relationship to all of the claimants of the estate. Such a fiduciary must be capable of reasonable impartiality toward various claimants and of reasonable zeal to further the interest of the estate as against any particular claimant. In our opinion, the appellee is not in a position to reasonably fulfill those obligations and is not a suitable person to act in a fiduciary capacity. On this record, we find there was an abuse of discretion to grant her letters of appointment.

The judgment of the Probate Court is reversed and the cause is remanded for further proceedings according to law.

*Judgment reversed.*

TROOP, J., concurs.
DUFFY, P. J., dissents.

DUFFY, P. J., dissenting. I dissent because a review of the transcript of the hearing in the Probate Court does not reveal sufficient evidence upon which to base a finding that the person appointed by the testator was not a suitable and capable person to administer her estate. It is true that previous hearings held before the court could have given the judge reasons for not appointing her. But where the court has to exercise supervision over her actions, it cannot be said that, based on the evidence of the objectors, the judge abused his discretion in the making of the appointment as executor.