DAVIS, ADMX., *v.* DAVIS ET AL.

(No. 77193-C—Decided April 29, 1970.)

Common Pleas Court of Mahoning County, Probate Division.

Messrs. *Brouse, McDowell, May & Bierce*, for plaintiff.
Messrs. *Obenour, Baker, Nehrer, Chapman & Coombs*, for defendants.
Mr. *Robert N. Dineen*, for guardian ad litem for minor defendant.

HENDERSON, J. This is an action for a declaratory judgment brought by the plaintiff, Pauline R. Davis as special administratrix, in which the judgment of the court is sought as to who is entitled to the distribution of the estate. In an earlier opinion, this court, upon the application of Pauline R. Davis for appointment as executrix, reserved judgment upon the permanent appointment until the determination of whether the provisions for Mrs. Davis in the will were impliedly revoked by the divorce of the parties coupled with a property settlement. *In re Estate of Davis* (1969), 22 Ohio Misc. 14.

William V. Davis and Pauline R. Davis were married December 7, 1957. On October 17, 1959, William V. Davis executed his last will and testament in which he left $100 to each of his three adult children by a prior marriage, Kriss V. Davis, Penny M. Boden, and Marilynne P. Plavsity. In item five the testator provided as follows:

"I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, of every kind, and description, which I may own or have the right to dispose of at the time of my decease, to my beloved Wife, Pauline R. Davis, to be hers, absolutely and forever."

Item six of the testator's will provided in part as follows:

"In the event that my Wife should predecease me or we should die as the result of a common accident, or should die within thirty (30) days of each other, then I give, devise and bequeath all the rest, residue and remainder of my estate to my Brother, Edwin L. Davis, of Columbus, Ohio, in trust, however, for the following uses and purposes, to wit:

"My Trustee, Edwin L. Davis, shall have and distribute the net income of said trust estate for the benefit of my Son, William Davis III, until such time as my son has obtained the age of twenty-five (25) years. When my Son has attained the age of twenty-five (25) years, my said Trustee is authorized to pay the balance of the trust fund to my Son and terminate the trust."

The remainder of item six provides at length for the powers of the trustee. In item seven, the testator appointed his wife Pauline R. Davis as executrix, and made an alternate appointment as follows:

"In the event that my Wife, Pauline R. Davis, should predecease me, or should we both die as the result of a common accident or catastrophe, or she prefers not to serve for any reason, then I make, nominate and appoint my Brother, Edwin L. Davis, as Executor of this, My Last Will and Testament, granting unto him the same powers and privileges previously granted to Pauline R. Davis and again request that no bond be required of my Executor."

Testator's minor son, William Davis III, was born of his marriage with Pauline R. Davis.

On May 17, 1966, the decedent and Pauline R. Davis entered into a separation agreement which provided for a division of the properties of the parties, alimony for the wife and support for their child. Under the terms of item 9 of the separation agreement, Pauline R. Davis released the decedent from all claims of inheritance. On June 5, 1967, the Court of Common Pleas of Mahoning County, Ohio, granted the decedent a divorce, upon his petition, his wife having been served with summons but being in default

of answer and not being present at the hearing. The decree of divorce found the separation agreement to be fair and equitable to both parties, approved it and made it a part of the decree.

Counsel for the testator's children by his first wife maintained that the provisions of the will for the benefit of his last wife are impliedly revoked by the divorce decree and property settlement, that the conditions under which the trust was provided for the benefit of the minor son (*i. e.*, the prior or simultaneous death of the wife) never materialized, and that therefore all four children should take equally by intestate succession. It is further maintained by them that the alternate executor Edwin L. Davis, should be appointed executor since Pauline R. Davis under the circumstances is not a suitable person.

Counsel for the minor trust beneficiary maintain that if the residuary bequest to Pauline R. Davis has been impliedly revoked, then the residuary estate passes to the trust under item 6 in accordance with the plain general intent or pattern of the testator; and that, furthermore, a gift over to the trust should be made by implication. Counsel observe that if the gift to the trust is not upheld a gross distortion of the manifest intent of the testator, and a complee frustration of his testamentary plan will have taken place.

Counsel for Pauline R. Davis concede that if the separation agreement is valid she cannot take under the will. They maintain, however, that the separation agreement is invalid, or, in the alternative, that Pauline R. Davis is entitled to rescind it, and that in either case the separation agreement does not revoke by implication the residuary provision for Pauline R. Davis, the divorced wife. Counsel urge that the separation agreement is invalid because it is not fair, reasonable or just in that it provides for a grossly inadequate property division for the wife—$12,000 in property and $23,000 of life insurance compared with an estimated gross estate of $180,000, and indefinite alimony provisions for the wife. Counsel urge that Pauline R. Davis was not represented by independent counsel when the contract was prepared and signed, that she did not fully

understand it and did not freely sign it. Counsel contend further that because of decedent's failure to transfer title to a parcel of real estate and to perform other obligations of the separation agreement, the latter should be rescindable by her.

As pointed out in the court's earlier opinion, the law of Ohio is well established that a divorce, coupled with a full property settlement, is such a subsequent change in the circumstances of the testator that any legacy or bequest in a will executed during marriage for the benefit of the divorced wife is impliedly revoked. *Younker* v. *Johnson* (1954), 160 Ohio St. 409; R. C. 2107.33. But divorce alone, without a separation agreement executed during coveture, does not impliedly revoke a devise or bequest for either one of the divorced parties. *Charlton* v. *Miller* (1875), 27 Ohio St. 298; *Codner* v. *Caldwell* (1951), 156 Ohio St. 197; *Lang* v. *Leiter* (C. A., Wood, 1956), 103 Ohio App. 119. Thus counsel for Pauline R. Davis in effect urge that since the separation agreement is invalid or rescindable the provisions of the will for the divorced wife should not be affected any more than if there had been no property settlement at all.

To be valid and enforceable an antenuptial or a separation agreement must be fair, just and reasonable under all the surrounding facts and circumstances, and where the provisions for the wife are disproportionate the burden rests upon those upholding the validity of the agreement to show that the wife had full disclosure or knowledge of the husband's property and voluntarily signed the contract. *Juhasz* v. *Juhasz* (1938), 134 Ohio St. 257; *Brewer* v. *Brewer* (C. A. Montgomery, 1948), 84 Ohio App. 35, 52 Ohio Law Abs. 116; Meier's Ohio Family Law (1963), Section 17.4, page 90. By her answer to the petition Pauline R. Davis has attacked the validity of the separation agreement.

It would seem, however, that Pauline R. Davis is not in a position in this court to challenge the validity of the separation agreement. For it is settled that a separation agreement is superseded by a divorce decree when the agreement is incorporated into, and made a part of the

decree, and that the obligations imposed are thereafter not those imposed by contract, but are imposed by decree and may be enforced as such. *Holloway* v. *Holloway* (1935), 130 Ohio St. 214; *Robrock* v. *Robrock* (1958), 167 Ohio St. 479; *Klassen* v. *Newell* (C. A. Franklin, 1957), 106 Ohio App. 186; *Williams* v. *Williams* (C. A. Miami 1959), 112 Ohio App. 412. The effect of the merger of a property settlement into a divorce decree is that judgment remedies instead of contractual ones become available to the parties. 2 Lindey, Separation Agreement and Ante-Nuptial Contracts, 1970 Cum. Supp., p. 36. Meier's Ohio Family Law (1963), Section 17.19, page 98. Hence, to avoid the consequences of the provisions of the separation agreement, Pauline R. Davis must attack the judgment or decree of the Division of Domestic Relations of the Court of Common Pleas into which the terms of the contract were merged. Whether the permanent property division provisions of the divorce decree can be set aside after the term in which the decree was rendered seems subject to very serious question. See *Newman* v. *Newman* (1954), 161 Ohio St. 247. But there appears to be no question at all that the validity of the judgment or decree of the Division of Domestic Relations cannot be attacked or set aside in this declaratory judgment proceedings in the Probate Division of the Court of Common Pleas. A judgment or decree for alimony can be opened, vacated or modified only by a proceeding for that purpose in the court in which it was rendered. 18 Ohio Jurisprudence 2d, Divorce and Separation, Section 141, page 76; Section 146, page 87. The statutory authority for the Court of Common Pleas to vacate or modify a judgment or decree specifically refers to the court's *own* final order. R. C. 2325.01. The answer of Pauline R. Davis would constitute a proper and timely attack upon her separation agreement under R. C. 2131.03, if the agreement were still operative. But now that the agreement has been merged into the decree her answer constitutes a collateral attack upon the judgment of the Domestic Relations Division of the Court of Common Pleas which had jurisdiction of the subject matter and the par-

ties. This court cannot properly entertain such an attack whether the facts before the rendering court warranted the judgment or not. 32 Ohio Jurisprudence 2d, Judgments, Section 702, page 373; 2 Lindey, Separation Agreements and Ante-nuptial Contracts, pages 31-50. This court, then, is bound by the divorce decree of the Domestic Relations Division of the Court of Common Pleas and its incorporation therein of the terms of the separation agreement, which, in turn, compels the determination that the provisions for Pauline R. Davis in the decedent's will have been revoked by implication.

In addition to the foregoing procedural considerations there seems to the court to be another reason, of a more substantive nature, why the same conclusion must be reached. In this declaratory judgment proceeding the main question is not the enforceability of the separation agreement or its continuing effectiveness to bar the wife from the legal rights she would otherwise have. Rather, the main question is the effect of the execution of the agreement and the subsequent decree upon the pre-existing will. In a proceeding to test the validity of a separation agreement, such as one to determine the statutory rights of a surviving spouse, evidence of a disproportionately small property provision for the wife would tend to vitiate the agreement. *Juhasz v. Juhasz* (1938), 134 Ohio St. 257. But in this proceeding to determine the rights of a divorced wife under her former husband's will, the disparity between the earlier provision for the wife in the husband's will and the later provision for her in the husband's agreement would constitute evidence of an intent to revoke the more ample provisions for the wife contained in the earlier will.

The next question presented for consideration is whether the residuary portion of the estate passes to the trustee for the benefit of the minor William Davis III, under item six of the will, upon the revocation by implication of the provisions for Pauline R. Davis. Item six appears to be a contingent residuary clause, the express contingency being the prior or simultaneous death of the wife. The will makes no express provision for the contingency

which actually occurred, *i. e.*, the revocation by implication of the provisions for Pauline R. Davis resulting from the separation agreement and the divorce decree. Counsel for the trust beneficiary have advanced several arguments to support their contention that under these circumstances the residuary estate passes to the trust under item six. Underlying all these arguments is the theme that it is clear from the will in its entirety, and from the pattern or scheme of the whole will, that the testator intended the residuary trust for his minor son to become effective in any event that his mother was not able to take the residuary estate.

It seems to the court that since the language of item six of the will is clear, precise and unequivocal, and not subject to doubtful import or interpretation, the effectiveness of the trust for the minor son can be maintained, if at all, only by the finding of a gift by implication. In *Casey* v. *Gallagher* (1967), 11 Ohio St. 2d 42, the court defined the implied gift doctrine in paragraph 5 of the syllabus, as follows:

"When a testator's will clearly reveals a general plan or intention as to the disposition of his property, and a situation arises that is not within the express language of the will, such general plan may be regarded as existing but incompletely expressed, and the failure to provide for the situation inadvertent rather than intentional, and a gift may be implied for the purpose of completing the general plan."

But as pointed out by Chief Referee Andrews in a case in which he refused to find an implied gift to trusts for grandchildren upon the renunciation by a son, "many of the decisions are irreconcilable" and "exact precedents are hard to find" upon the subject. *Howland* v. *Stone Foundation* (Probate Court, Cuyahoga, 1969), 17 Ohio Misc. 179. None of the authorities cited by counsel involves facts identical with those in this case. At least two of them involve the rights of remaindermen when the life tenants had predeceased their testators. *In re Soesbe's Estate* (Wash. 1961), 364 P. 2d 507; *Rodway* v. *Orgill* (Probate Court, Cuyahoga 1969), 20 Ohio Misc. 85.

It seems to the court that in determining whether the testator's will clearly reveals a general plan or intention as to the disposition of his property it is the testator's *last* will that is the basis of the determination. In this case this would mean the will remaining after the implied revocation of item five providing for Pauline R. Davis. Item six, providing for the son's trust, is not revoked by the circumstances of the separation agreement and divorce decree. Only the provisions for the wife are revoked. *Younker* v. *Johnson* (1954), 160 Ohio St. 409; *Pardee* v. *Grubiss* (C. A., Cuyahoga, 1929), 34 Ohio App. 474, 7 Ohio Law Abs. 459; *Skorapa* v. *Skorapa* (P. C., Cuyahoga, 1961), 87 Ohio Law Abs. 232. But this does not mean that the revocation of the provisions for the former wife, and the separation agreement and the divorce do not have some relevance in construing the unrevoked portions of the will. The decedent's general plan or intention as embodied in the will as originally executed has been grossly distorted by the separation agreement, the divorce and the resultant revocation of the primary residuary clause. Furthermore, in determining whether there can be an implied gift to supplement the unrevoked portions of the will, the circumstances causing the revocation should be considered along with the revocation itself. In this case the testator executed his will a little less than two years after his marriage with Pauline R. Davis and shortly after the birth of his son William Davis III. At that time he intended to give only $100 each to his three children by a prior marriage, and the residue of his estate to his new wife, or, if she be not living at his death, then to his new son. Then circumstances changed. The testator became estranged from his new wife, persuaded her to sign a separation agreement giving her substantially less than her benefits under the will, and finally divorced her. Whatever may be thought of the decedent's actions throughout all this, it seems clear to the court that the revocation of the provisions for Pauline R. Davis, the primary residuary beneficiary, coupled with the circumstances outlined above which caused the revocation, utterly destroyed any basis for an implied gift to the secondary and contingent beneficiary. At the

time of the testator's death, there was nothing of substance left from which could be implied a continuing intent to prefer his youngest son to the virtually complete exclusion of his three oldest children by his earlier marriage. Consequently, the provisions of item six of the will must fail, and the residuary estate passes by intestate succession in equal shares to the testator's four children.

The final question presented is the appointment of the fiduciary. Pauline R. Davis named by the testator as primary executrix, having by virtue of this decision no interest in the estate under the will, claims an interest in the assets of the estate by reason of the unexecuted portion of the separation agreement and divorce decree by which she was to have received title to a furnished cottage and an acre of land. The decedent's obligations under the separation agreement and the divorce decree are enforceable against his estate. *Hassaurek* v. *Markbreit* (1903), 68 Ohio St. 554. Pauline R. Davis would therefore appear to have antagonistic and adverse interests which would conflict with her fiduciary position, thus making her, under the circumstances of this case, an unsuitable person to be appointed executrix. *In re Estate of Young* (C. A., Franklin, 1964), 4 Ohio App. 2d 315.

The testator nominates his brother, Edwin L. Davis, as executor in the event Pauline R. Davis should die before or with him or "prefers not to serve for any reason." None of these contingencies took place. Pauline R. Davis did not prefer not to serve. But it would seem to the court that by analogy to the doctrine of gift by implication, where the testator's general plan or intention is clear, words of appointment may be implied to cure an inadvertent omission. It would seem obvious that the testator wanted his brother to serve as executor if his wife did not do so. It would seem that the testator would not logically have intended to place any limitation upon the circumstances responsible for her not serving, and that his failure to adopt language comprehensive enough to encompass the rather unexpected events which followed was by inadvertence rather than by design. Consequently, Edwin L. Davis should be appointed executor.