IN RE ESTATE OF RUGGLES.

(No. 830—Decided November 9, 1973.)

*Mr. Warren W. Ruggles* and *Mr. Herbert R. Freeman*, for appellant.

*Mr. Walter L. Hite* and *Mr. Jack T. Zeller*, for appellees.

WILEY, J. The appellant is a son and coexecutor named in the will of Wilhelmina Ruggles, testatrix. Netta W. Schnee is a daughter of the testatrix and was named the other coexecutor in the will. Both filed applications to be appointed executor (executrix) of the estate. The sole

remaining heirs, also named in the will, were the other two children of the testatrix and they joined with Netta W. Schnee in opposing the appointment of West R. Ruggles.

On July 12, 1973, the trial judge entered judgment, after an evidentiary hearing upon the motions of Netta W. Schnee and the other two children, finding that West R. Ruggles was not a suitable person to be appointed as an executor of the estate. The application of the appellant, West R. Ruggles, for appointment as executor was denied and the letters testamentary were ordered issued to Netta W. Schnee. It is from this judgment that the appeal has been taken.

R. C. 2113.05 reads, in pertinent part, as follows:

"When a will is approved and allowed, the probate court shall issue letters testamentary thereon to the executor named in such will, if he is suitable, competent, accepts the trust, and gives bond if that is required. * * *"

The motions to deny the application of West R. Ruggles stated that he lacked the *competency* to perform the duties required. The trial judge found that the motions were well taken in that the applicant, West R. Ruggles, was not a *suitable* person to perform the duties required. We find that the probate judge had full authority to proceed on a motion raising the question of competency to determine the question of suitability. However, this court finds that the trial judge, by not making a specific finding of incompetency, tacitly found that the applicant, West R. Ruggles, was competent. The sole question in this case is whether or not West R. Ruggles is "suitable" within the meaning of the statute.

West R. Ruggles will hereinafter be referred to as the appellant and the other three children will be referred to as the appellees, unless otherwise indicated. The appellees advanced three reasons to indicate that the appellant was *not competent*. Inasmuch as this court has interpreted the trial judge's judgment entry as a tacit finding that the appellant was competent, we will analyze the reasons advanced in regard to competency as they might apply to

suitability. The three reasons advanced were: (1) the appellant was unable to recognize his own brother; (2) he had forgotten the date of the funeral of the testatrix; (3) he had gone for some time making no business transactions without first consulting his wife and there was a seeming inability to carry out transactions without first consulting her.

As to the first reason advanced, the record indicates that the question of ''recognizing'' was not necessarily the inability to know his brother. Rather, the appellant merely glanced at his brother, Lee E. Ruggles, at the funeral home, and extended his hand saying: ''I don't believe I know you. I am West Ruggles.'' The day before the funeral, the appellant spoke several times to his brother at the lawyer's office where the members of the family had gathered. At the hearing on the motions, Lee E. Ruggles testified that the main reason he requested his brother not be appointed executor was his failure to recognize him at the funeral home, and because of his physical condition.

As to the second reason, the appellant, when testifying in the trial court, did not remember the date of the funeral.

With reference to the third reason, the appellant did indicate that he consulted with his wife before making business transactions.

The appellant was born in 1903 and did have some physical disabilities which were not such as to prevent his mobility. He did attend the funeral. He did attend the family gathering at the lawyer's office, and he did attend the hearing on the motions in the probate court. The appellant does have some glaucoma that has not materially interfered with his eyesight; he is able to get around fairly well, but has discontinued driving an automobile; he had been in the hospital for Parkinson's disease; however, no competent medical evidence was adduced to indicate that the appellant lacked mental capacity to administer the trust.

The trial court stated at the conclusion of the hearing that the applicant ''because of his physical condition,

which had some effect on his mental condition, was unsuitable to serve." The trial court also stated that it would be a disservice to the appellant to permit him to serve, that his knowledge and recall were fine, but he was not physically capable.

As assignments of error, the appellant contends that the judgment of the trial court is: (1) unsupported by the evidence and is contrary to the weight of the evidence, that (2) it is contrary to law, that (3) the court abused its discretion, and that (4) the court erred in overruling appellant's motion for directed verdict.

Throughout 18 pages of the transcript of proceedings on direct examination and by 4½ pages on cross examination, covering a wide range of persons, subjects and subject matter, the mental alertness and capacity of the appellant were convincingly demonstrated. The answers given would do credit to most high school or even college graduates.

We find the reasons advanced by the appellees for the rejection of the appellant as an executor to be unconvincing and little more than trival. Therefore, assignments of error 1, 2 and 4 are found well taken. Whether the court abused its discretion becomes an academic question in view of our ruling on the other three; however, even though appellant did not separately brief each assignment of error, in keeping with the directive of Appellate Rule 12 and of recent decisions of the Supreme Court, we find assignment of error No. 3 well taken as to an abuse of judicial discretion in the sense that the trial court's action was contrary to law. *Clemons* v. *Bd. of Education* (C. A. 6), 228 F. 2d 853, 73 Ohio Law Abs. 23, 3 Ohio Jurisprudence 2d 151 (Supp.), Appellate Review, Section 746. Cf. *In re Estate of Young*, 4 Ohio App. 2d 315.

The word "suitable" has a variety of meanings as stated in Webster's Third New International Dictionary (1970). Several of the definitions which can be applied to the word "suitable," as used in R. C. 2113.05, are:

"* * * appropriate from the viewpoint of propriety, convenience, or fitness: * * * having the necessary

qualifications: meeting requirements: *apt, qualified* (find a suitable actor for the role) (looked about for a suitable art school) * * *."

The trial court indicated that it would be a disservice to the appellant to permit him to serve; however, this is not an acceptable test of suitability, and even if the court were correct in this aspect, the choice was that of the appellant and not of the court. *Mobley* v. *Mobley,* 149 Md. 401 at page 411.

Ohio courts have interpreted the meaning of "suitable" in cases in which a conflict of interest of the applicant was considered in making the determination of whether he was suitable.[1]

In *In re Estate of Young, supra,* the court reviewed some of the textbook authorities, case law and ALR articles with reference to suitability. At page 320, the court stated:

"In the appointment of a named executor, unlike that of an administrator, the deference due the testator's expressed desire is a factor. This, of course, cannot be formulated as a rule with precise application. Rather it represents an attitude of mind in determining the suitability or, as here, in reviewing a claim of an abuse of discretion. It would seem, too, that where the circumstances would

---

[1]*Bowman, Estate of, In re,* 76 Ohio Law Abs. 597 (conflicting interests were determined by the court to make executrix not suitable, even after she originally had been appointed). *In re Estate of Davis,* 22 Ohio Misc. 14 (divorced wife, named in will as executrix eight years prior to being divorced, not barred as "not suitable" solely because of the divorce. Conflict of interest held in abeyance.) *Davis* v. *Davis,* 24 Ohio Misc. 17 (same executrix in *In re Estate of Davis, supra,* deemed "not suitable" because of "antagonistic and adverse interests which would conflict with her fiduciary position." The antagonistic and adverse interest arose out of the interpretation of a separation agreement which had been executed eight years prior at the time of the divorce. See *In re Estate of Davis, supra.*) *In re Estate of Young,* 4 Ohio App. 2d 315 (two previous attempted administrations failed and the trial court granted an application to the same person for appointment as executor for a third administration. The Court of Appeals, one judge dissenting, reversed, finding that the executrix' "treatment of the joint and survivorship property was lacking in the candor which her fiduciary position demanded.")

justify a removal from office if appointed, then initial appointment could be refused.''

At page 321, the court also stated:

''It is equally clear, particularly in states like Ohio where suitability is a criterion, that 'an adverse interest or standing may warrant or require the refusal of the appointment, depending upon the nature or extent of such interest, the relationship of the parties, or other circumstances involved in the particular situation.' 18 A. L. R. 2d 633, at 635.''

Further, at page 322, it was said:

''* * * In our opinion, it contemplates that to be suitable a person must be reasonably disinterested. Where adverse and antagonistic interests conflict with the fiduciary position, the question becomes one of weighing the degrees of conflict under all the surrounding circumstances. The present case includes almost every element that any court has ever considered as ground for disqualification.''[2]

The only Ohio case cited by counsel which makes reference to mental and physical incapacity is *Estate of Sells*, 5 Ohio N. P. (N. S.) 629. The syllabus of that case states, in part:

''* * * [T]he probate court can not consider objections to her appointment * * * on the ground of her hostility * * * or her lack of business experience, or her unsuitableness for any other reason which does not amount to mental or physical incapacity to discharge the trust.''

In this case there was no attempt made to prove any mental or physical incapacity.

In *In re Morgan's Estate*, 209 Mich. 65, 74, 176 N. W. 606, 609, the court stated:

''If a fair issue of fact is raised by the evidence of those denying the widow's competency because of unsound mind,

---

[2]For additional cases on conflict of interest as affecting "suitability," see *Bowman, Estate of, In re*, *supra* note 1, at 6; *Cefalo* v. *Cefalo*, 270 N. E. 2d 405; *Grossman* v. *Grossman*, 179 N. E. 2d 900, 902 (in which the court stated that "the term 'suitable person' connotes a person who is considered to have the capacity and the will to discharge duties in the particular case with fidelity and efficiency.")

lack of normal understanding, or average intelligence * * * the discretion of the probate court can readily be conceded.''

In the case of *In re Leland's Will*, 219 N. Y. 387, 114 N. E. 854, cited in the brief of appellee and also referred to in appellant's brief, the appellate court did disqualify an individual whose understanding had been hampered by two strokes of apoplexy. That court sustained the trial court and stated that it was accepting the facts found by the trial court and could not, as a matter of law, overrule the trial court's finding. In *In re Leland's Will* (Sup. Ct.), 161 N. Y. Supp. 316, the facts of the case were set forth in full. The appellant was 63 years of age, had suffered two paralytic strokes, confining him to a wheelchair and limiting his ability to concentrate on business matters to not more than two hours a day. His applications for letters were denied, the estate being over $5,000,000 and widely invested. The trial court, in determining whether the applicant was to be disqualified for a ''want of understanding,'' indicated that the nature and extent of the duties to be discharged by the executor in a particular case should be considered in determining the question of the applicant's mental competency and the court made particular reference to the size of the estate and the nature and extent of the properties and the complexities involved. The trial court also indicated that both sides of the applicant's body were paralyzed; he had lost his voice so that he could only be heard in a whisper. He was unable to attend court, he had two lesions of the brain, and his mental faculties were impaired. Of additional importance in this case was the fact that there were three medical experts who testified on behalf of those who were objecting to his appointment. These experts indicated not only that he had an impairment of his mental faculties, but that the mental condition was progressive.

Even the family doctor called on behalf of the applicant admitted that the respondent's ''powers of protracted mental work'' had been lessened. The trial court further stated that the purpose of the statute was to permit the

surrogate to withhold letters from one who, on account of mental infirmity, was unfit to discharge his duties. It was further determined that the applicant would not be able to apply his mind to the "management of the vast estate."

By way of comparison, in the case *sub judice*, the estate is comparatively simple. The application for appointment as executrix filed by appellee, Netta W. Schnee, indicates that the estate consists of personal property of the probable value of $7,000 and real estate of the probable value of $100,000.

In view of the lack of complexity, together with the statement of Netta Schnee, at page 26 of the record of proceedings, that she would try to make working with her brother as a coexecutor in handling the estate a success, any lingering question of suitability is removed.

As to the physical condition affecting the competency to act as executor or administrator, see, generally, Anno. 158 A. L. R. 296, Executors and Administrators, Section 7. We quote with approval the following:

"Broadly stated, old age and bodily infirmities do not disqualify a person from acting in the capacity of executor or administrator. There must be such physical debility as to indicate a lack of intelligent capacity to execute the duties of the trust, the rule of disqualification in this regard being that letters should not be issued 'to one unable, by reason of incurable bodily disease, to understand the duties of a given trust sufficiently to safeguard the interests of the living.'" *Griffin* v. *Irwin*, 246 Ala. 631, 21 So. 2d 668; *In re Stege's*, 164 Misc. 95, 299 NYS 115; *Mobley* v. *Mobley*, 149 Md. 401, 131 A. 770.

The judgment of the Probate Court is reversed and the cause is remanded with instructions that West R. Ruggles be appointed coexecutor, and for further proceedings according to law.

*Judgment reversed.*

POTTER, P. J., and HUFFMAN, J., concur.

HUFFMAN, J., of the Court of Common Pleas of Sandusky County, sitting by assignment.