**Sherry RUSSELL, Robert Russell, II, Appellants,**

v.

**Marie K. JOHNSTON, Executor of the Estate of Robert R. Russell, Deceased, Appellee.**

**No. 67634.**

Supreme Court of Iowa.

Dec. 22, 1982.

T.K. Ford, Burlington, for appellants.

Robert J. Todd and Edward W. Dailey of Edward W. Dailey Law Offices, P.C., Burlington, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, LARSON, and SCHULTZ, JJ.

SCHULTZ, Justice.

Two issues are presented in this appeal from a ruling in a will construction action. First, we must determine whether a devise in decedent's will to a woman who decedent later married was revoked by the subsequent dissolution of that marriage. The district court held that the devise was not so revoked. Second, we must decide whether the district court erred in interpreting a contingent provision of decedent's will. The district court held that if the devise to decedent's second spouse, Marie K. Johnston (Marie), failed, Marie was entitled to the estate as assignee of the interest of the contingent devisee, Don Rappenecker (Don). The decedent's children, Sherry Russell and Robert Russell II, contend that the devise to Marie is revoked pursuant to Iowa Code section 633.271. The children also contend that the contingent devise lapsed since it was conditioned upon Marie's not living on the thirtieth day following decedent's death and Marie was then alive. The children urge that because of the revocation of the devise to Marie and the lapse of the contingent provision, the estate passed by intestacy to decedent's heirs at law. We hold that the devise to Marie is revoked by the statute, but we also hold that the contingent

devise to Don does not fail. We affirm the ruling of the district court.

■■■ A declaratory judgment to construe or interpret a decedent's will is tried in equity and our review is de novo. *Matter of Estate of Kruse,* 250 N.W.2d 432, 433 (Iowa 1977); *Matter of Estate of Miguet,* 185 N.W.2d 508, 513 (Iowa 1971). In a de novo review we must make findings of fact anew; however, when considering the credibility of the witnesses we give weight to the fact findings of the trial court, although we are not bound by them. *See* Iowa R.App.P. 14(f)(7). We shall set out the appropriate facts in each division of this opinion.

I. *Revocation of devise to spouse by dissolution of marriage.* In December 1976 decedent's twenty-eight year marriage was dissolved. The following April decedent began to court Marie, who was then a married woman. A decree dissolving her marriage was entered on August 25, and decedent announced his engagement to Marie shortly thereafter. On September 2 decedent executed a will appointing Marie as his executor and devising all of his estate to her provided she was living on the thirtieth day following the date of his death.

Decedent and Marie were married on September 24, 1977, but on June 2, 1978, Marie filed for dissolution of the marriage. A decree dissolving the marriage was entered on September 5. On October 17, 1978, decedent died without having changed his will. The will was admitted to probate on October 19 and Marie was qualified as executor.

The children argue that the provision in the will in favor of Marie is revoked by operation of Iowa Code section 633.271. That section provides in pertinent part: "If after making a will the testator is divorced or the marriage is dissolved, all provisions in the will in favor of the testator's spouse are thereby revoked." The trial court concluded that this section was inapplicable since the will was executed prior to the marriage and Marie was not then a "spouse". The trial court further concluded that the legislature must have intended for

this section to apply "to a testator making a will in favor of his wife as opposed to, his girlfriend." Thus, the district court limited the definition of the term "spouse" to the actual status of the devisee at the time of the execution of the will. The children urge that the district court's interpretation is too restrictive and does not take into account the section's clear reference to "testator's spouse". They urge that the term "testator" can mean the one who makes the will, has made a will, or dies leaving a will. They contend that Marie was decedent's spouse after he had made a will and that she was his divorced spouse when he died leaving a will.

In determining the meaning of section 633.271 we turn to our case law decided before and after the section's enactment. At common law the divorce of a testator and his wife after the making of his will did not revoke the provisions of the will. *In re Brown's Estate,* 139 Iowa 219, 223, 117 N.W. 260, 263 (1908). However, after the enactment of section 633.271 we held that a dissolution of marriage revokes all provisions in the will in favor of a spouse. *Porter v. Porter,* 286 N.W.2d 649, 651 (Iowa 1979). In *Porter,* however, the spouse was married to the decedent at the time of the execution of the will.

In applying our own statute for the first time to the question before us, we are aided by case authority from other states with similar statutes. Three state courts have applied statutes mandating revocation of will provisions that favor a former wife to a wife who was not married to the testator at the time he executed the will. In *Estate of Joseph B. Bloomer,* 620 S.W.2d 365 (Mo. 1981) (testator executed a will leaving his property to a woman he married later; however, they were divorced prior to his death which revoked the provision in her favor); *Conascenta v. Giordano,* 143 So.2d 682 (Fla.Dist.Ct.App.1962) (testator executed will prior to marriage, marriage ended in divorce, and both parties remarried before testator's death); *McFarlen v. McFarlen,* 536 S.W.2d 590 (Tex.Civ.App. 1976) (testator married, executed his will,

divorced his spouse, and subsequently remarried and divorced the same woman; when he died without changing his will the court precluded her from taking under his will).

The clear purpose of section 633.271 is to provide an automatic revocation of provisions in a will in favor of a spouse after a marriage is dissolved. The legislature obviously recognized that due to the change in the family structure new moral duties and obligations may have evolved subsequent to the execution of the will, and that due to the turmoil of a dissolution an automatic revocation is in the best interest of the testator. Certainly, the purpose for which the statute was enacted is equally applicable to a testator's spouse whether she is married before or after the execution of the will.

■ We conclude that the legislature intended that pursuant to section 633.271 any provision in a will in favor of a former spouse of a decedent is to be revoked when there is a divorce or dissolution of marriage prior to death. We hold that this provision is equally applicable when the marriage of the parties takes place after the execution of the will.

■ Marie urges, however, that there should not be a mandatory revocation and that we should look to the clear intent of the decedent. She contends the evidence shows that the decedent before, during, and after the marriage intended that the property be distributed as provided by his will. Nevertheless, the plain unequivocal language in section 633.271 provides for a revocation when the "testator is divorced or the marriage is dissolved." This language comports with the general rule that when a revocation is presumed by law from a change in the testator's circumstances due to divorce, no evidence is allowed to rebut that presumption. 79 Am.Jur.2d *Wills* § 625 (1975).

Accordingly, we find that section 633.271 revokes all provisions of the will in favor of Marie.

II. *Gift by implication.* The district court concluded that even if section 633.271 did apply, Don would take under the doctrine of gift by implication. Marie contends that she is entitled to take as the assignee of Don regardless of the application of section 633.271.

The will specifically set out in item II the following: "In the event that Marie K. Johnston shall not be living at 11:59 A.M. on the 30th day following the date of my death, I will, devise, and bequeath all of my estate to Don Rappenecker." The children contend that the bequest to Don must fail because the will states clearly that it was conditioned upon Marie's not living on the thirtieth day after the date of decedent's death.

■ We recently considered the proper construction of a will when the devise of property to a surviving but divorced spouse was revoked by operation of section 633.271 and the devise to the second devisee was contingent on the spouse's predeceasing the testator. *Porter v. Porter,* 286 N.W.2d 649 (Iowa 1979). In *Porter* it was contended that the second devisee could not take under the terms of the will because the spouse had survived the testator. We refused in *Porter* and we refuse here to accept the argument that a literal translation must be our sole method of interpretation. *Id.* at 654. In ascertaining the intent of the testator, which is the guiding light in will interpretation, we rely primarily on the language contained in the will; however, the substance and intent, rather than the words, are to control. *Id.; Matter of Estate of Kalouse,* 282 N.W.2d 98, 104 (Iowa 1979). To ascertain the substance and intent we examine the entire will, and the circumstances surrounding the decedent at the time he made the will, to determine the scheme of distribution and, ultimately, the testator's intent. This examination is subject to the limitation, prevailing generally, that extrinsic facts and circumstances cannot be resorted to in order to defeat the plain and unambiguous language of the will. *Porter,* 286 N.W.2d at 652–54; *Kalouse,* 282 N.W.2d at 104. Here we must

determine the meaning of the survivorship clause by examining the entire will. We conclude that the testator's intent is quite certain. *Porter,* 286 N.W.2d at 652.

Decedent's will clearly denotes a preference for Marie first and then for Don, with no provision for further contingent beneficiaries and no reference to his heirs at law. In *Porter* we recognized "that in order to give proper respect to the testator's intent a court may determine that the testator made a gift 'by necessary implication' from his will," and we then approved the following description of the doctrine of gift by implication:

> When a testator's will clearly reveals a general plan or intention as to the disposition of his property, and a situation arises that is not within the express language of the will, such general plan may be regarded as existing but incompletely expressed, and the failure to provide for the situation inadvertent rather than intentional, and a gift may be implied for the purpose of completing the general plan.

*Davis v. Davis,* 24 Ohio Misc. 17, 24, 258 N.E.2d 277, 282 (Ct.C.P.1970), quoted in *Porter,* 286 N.W.2d at 654.

As did the trial court, we conclude that the doctrine of gift by implication is applicable here for the probability of implication is strong. Decedent's will certainly reveals a general plan as to the distribution of his property. We also find that the circumstances surrounding the decedent at the time he drew his will evince a similar scheme of distribution.

At the end of 1976 decedent was in the position where his twenty-eight year marriage had been dissolved, his former wife had been granted custody of his minor son, and his share of the family tax service business had been awarded to his former wife. Decedent was both emotionally and financially downcast. However, he began to recover once Don, who was his longtime personal friend, helped him to establish a franchise tax office in a building that Don had bought for that purpose.

In April of 1977 Marie came into the picture and on September 2 decedent executed the will in controversy. Also in September, decedent changed the named beneficiary on all four insurance policies from his first wife or his children to his estate.

We believe this change in designation of the insurance policies is significant. It strongly indicates that decedent intended for these proceeds to be governed by the provisions of his will rather than for them to pass to his first wife or to his children. We also find it significant that the decedent named his estate, and not Marie, as the beneficiary. We conclude that by naming Don in his will decedent made a conscious effort to repay his friend for helping him to regain his emotional and financial stability. Moreover, the circumstances surrounding the execution of the will strongly corroborate our conclusion that decedent intended a general plan to leave his property first to Marie, but if that bequest failed, then to Don. Thus, even though there is no clause specifically disinheriting the children, as in *Porter,* we hold under the facts of this case that decedent intended to dispose of his property to Don if for any reason Marie was unable to take under the will. Thus, despite the fact that Marie survived the decedent by more than thirty days, the bequest to Don is valid.

In sum, we hold that Marie Johnston is entitled to decedent's estate as assignee of Don Rappenecker.

AFFIRMED.